**D. C. TRANSIT SYSTEM, INC., Plaintiff,**
**v.**
**William MASSEY, Deputy Commissioner,**
**United States Employees' Compen-**
**sation Commission**
**and**
**William Guinn White, Defendants.**

**Civ. A. No. 3192–65.**

United States District Court
District of Columbia.

Nov. 4, 1966.

Richard W. Turner, Washington, D. C., for plaintiff.

David G. Bress, U. S. Atty., Joseph M. Hannon and Ellen Lee Park, Asst. U. S. Attys., and George Lilly, Dept. of Labor, Washington, D. C., for defendant Massey.

Frederick H. Livingstone, Washington, D. C., for defendant White.

OPINION

HOLTZOFF, District Judge.

This is an action under 33 U.S.C. § 921, to review a Workmen's Compensation award made by a Deputy Commissioner under the Longshoremen's and Harbor Workers' Compensation Act. This statute constitutes the Workmen's Compensation law for the District of Columbia, D.C.Code, § 36–501. The action is brought by the employer, who challenges the award and is before the Court on cross-motions for summary judgment.

The defendant William G. White was a bus driver employed by the plaintiff, D. C. Transit System, Inc., which is self-insured under the Workmen's Compensation statute. He had been in the service of the company for 28 years. On July 19, 1963, he was injured in an accident in the course of his employment. The employer furnished him with medical treatment and hospital care, and

paid weekly compensation to him voluntarily until he completely recovered from his physical injuries. He continued to suffer, however, from a neurosis that completely disabled him from continuing to drive a bus and he no longer continued in his previous occupation. These facts are undisputed.

The controversy is over the question whether his neurosis was the result of the accident and, therefore, arose out of and in the course of employment. The Deputy Commissioner resolved this issue in favor of White. The employer contests the Deputy Commissioner's finding and conclusion on this point, and contends that the employee's neurosis had no connection either with the accident or with his employment.

■ The evidence in support of the claim on this issue was far from satisfactory, especially because the claimant's credibility was seriously impeached. The scope of judicial review, however, in cases such as this is restricted and limited. The Court may not review the evidence and reach an independent conclusion as though the review is a trial *de novo*. So, too, the Court may not review the weight of evidence and set aside the findings of fact of the Deputy Commissioner, if it deems them to be contrary to the weight of evidence. The function of the Court is limited to determining whether there is substantial evidence to sustain the findings. While substantial evidence is more than a scintilla, it does not mean that the Court may set aside the findings if it deems the weight of evidence to be the other way. In connection with determining whether there is substantial evidence to sustain the findings, the Court may not determine the credibility of witnesses. This function is reposed in the trier of the facts, in this instance, the Deputy Commissioner.

In the light of these principles of law, the salient features of the evidence may be summarized as follows. As heretofore stated, White was injured in the course of employment on July 19, 1963. Payments were made to him by the employer from July 20, 1963 to July 31, 1964, on the basis of temporary total disability, at the rate of $70 a week, in the aggregate sum of $3780. The average weekly wages of the employee amounted to $111.10. The employer discontinued further payments on the admitted ground that the employee had fully recovered from his physical injuries. He, however, developed a neurosis that prevented him from resuming his occupation and made him unable to drive a bus.

The psychiatrist, who had been treating him, Dr. Andred, diagnosed his ailment as "a traumatic depressive reaction following trauma", and expressed the opinion that the accident was a reasonable probable cause of his condition. It was disclosed, however, that back in 1958, White had been in another accident not connected with his employment, which was followed by a neurosis that required a number of electric shock treatments. Dr. Andred diagnosed that condition as "involutional depression involving some paranoid trends", and expressed the view that his patient had fully recovered. According to Dr. Andred there was a clear difference between White's 1958 affliction and his 1963 ailment, and there was no connection between the two. Admittedly White resumed his occupation as a bus driver and continued in it until the accident of July 19, 1963.

On the other hand, two psychiatrists, Dr. Hyman Shapiro and Dr. Leon Yochelson, who examined the claimant at length in the employer's behalf, were of the opinion that the claimant was suffering from "an involutional depression", rather than "a post traumatic depression", and that his 1963 illness was not connected with the accident of July 19, 1963, but that the occurrence of the accident was a mere coincidence with the onset of the sickness. According to Dr. Shapiro it was the same ailment as that from which the claimant had suffered in 1958. He also pointed out that the claimant was treated for the symptoms of involutional depression in March

1963, four months before the accident. Dr. Yochelson expressed the view that White's condition was related to a "change of life".

■ It is immaterial what conclusion this Court would have reached if its function were to consider the evidence *de novo*. The Court is constrained to the conclusion that there was substantial evidence to sustain the findings of the Deputy Commissioner. He had the right to accept the opinions of Dr. Andred, if he chose to do so. This result, however, does not dispose of the case, in the light of the unusual features about to be discussed.

■■ Counsel for the employer introduced evidence to the effect that the claimant retired on September 1, 1964 at the age of 62, and since that time has been receiving the sum of $236 a month as a retirement annuity under the contributory pension system maintained by the employer.[1] To be required to pay Workmen's Compensation in addition to the pension is to exact double payments from the employer. It is necessary in this connection to bear in mind the basic theory on which the Workmen's Compensation system is based and its underlying philosophy. Workmen's Compensation is not analogous to the payment of a judgment for damages in a tort action. No award is made for pain and suffering or mental anguish, or for the disability as such. Workmen's Compensation is not based on fault. It is a reimbursement to the injured workman for the earnings that he loses as a result of his injuries, if he is injured in the course of his employment. It is a pecuniary economic recompense for loss of wages and nothing else, and is one of the expenses of the industry. An injured workman, who some time after he is injured, retires and receives a pension under a system maintained by his employer no longer loses any wages. He is out of the industrial ranks for the rest of his life. His financial requirements are taken care of by the pension. It follows hence that to allow Workmen's Compensation over and above his pension, in effect, constitutes double payment. The situation would be entirely different if the workman received an income from an outside, unrelated source, whether by way of insurance maintained by himself or as a gift or gratuity from someone.

This doctrine is developed and approved in the leading treatise on this subject, Larson's Workmen's Compensation Law, §§ 97 and 97.10, pp. 488 and 489:

"Once it is recognized that workmen's compensation is one unit in an over-all system of wage-loss protection, rather than something resembling a recovery in tort or on a private accident policy, the conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed.

\* \* \* \* \*

"Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage loss benefit. This conclusion is inevitable, once it is recognized that workmen's compensation, unemployment compensation, non-occupational sickness, and disability insurance, and old age and survivors' insurance are all part of a system based upon a common principle."

---

1. In addition, the claimant is receiving Social Security payments at the rate of $121.00 a month.

The Court concludes that on this basis the compensation awarded to the claimant should be discontinued as of September 1, 1964,—the date of his retirement,—and that the award should be modified accordingly.

The plaintiff's motion for summary judgment is granted in part as indicated in this opinion.

The defendants' motion for summary judgment is denied.