483 A.2d 748

MAYOR AND CITY COUNCIL OF BALTIMORE

v.

Bernard P. OROS, John B. Smith, Sr. and
Gary Joseph Fischer.

No. 42, Sept. Term, 1984.

Court of Appeals of Maryland.

Nov. 9, 1984.

Motion for Reconsideration Denied Dec. 21, 1984.

L. William Gawlik, Asst. Sol., Baltimore (Benjamin L. Brown, City Sol., and Sheldon H. Press, Chief Sol., Baltimore, on the brief), for appellant.

Michael Marshall, Baltimore (Marvin B. Steinberg and Steinberg, Schlachman, Potler, Belsky & Weiner, Baltimore, on the brief), for appellees.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT

MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

MENCHINE, Judge.

The appellees, Bernard P. Oros, John B. Smith, Sr., and Gary Joseph Fischer, all are police officers employed by the Mayor and City Council of Baltimore (the City). Each sustained an accidental injury arising out of and in the course of his employment for which separate workmen's compensation claims were filed.[1]

Although, as footnoted, *supra,* awards for temporary total disability were passed by the Workmen's Compensation Commission (the Commission) as to each appellee, the City paid each appellee his full wage for all periods of temporary total disability. The brief of the City stated that "Every employee is entitled to receive accident leave allowance pursuant to the contractual agreement between the Mayor and Council of Baltimore and the employee's collective bargaining agent."

In due course each appellee requested a hearing before the Commission, seeking compensation benefits for permanent partial disability. At each such hearing the City raised the issue "whether it was entitled to a set off *as against an award of permanent disability* for the difference between the temporary total disability rate and the accident leave rate (or full salary) *paid in lieu of temporary total disability benefits.*" (Emphasis added.) Entitlement to such

---

1. Oros filed claim on March 1, 1981. An order was passed by the Workmen's Compensation Commission on March 27, 1981 finding an average weekly wage of $290.00 and ordering payment of compensation for temporary total disability at the rate of $194.00 weekly.

Smith filed claim on September 10, 1980. An order was passed by the Workmen's Compensation Commission on October 31, 1980 finding an average weekly wage of $286.50 and ordering payment of compensation for temporary total disability at the rate of $191.00 weekly.

Fischer filed claim in May 1981. An order was passed by the Workmen's Compensation Commission on July 10, 1981 finding an average weekly wage of $308.09 and ordering payment of compensation for temporary total disability at the rate of $206.00 weekly.

a set off was claimed under Article 101, § 33(c) that reads as follows:

"(c) Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished employees of employers covered under § 21(a)(2) of this article, the dependents and others entitled to benefits under this article as a result of the death of such employees, the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer and the Subsequent Injury Fund for any benefit under this article. If any benefits so furnished are less than those provided for in this article the employer or the Subsequent Injury Fund, or both shall furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required in this article. Provided, however, that the computation of the additional benefit shall be applicable only at the time of the initial award of benefits and shall not be applicable to any cost of living adjustments after the initial award, and this provision shall be retroactive to benefits received before July 1, 1980."

At separate hearings, differing decisions were made by the Commission upon the issue. In the cases of Oros and Smith, Commissioner Mercaldo allowed the City to set off against awarded permanent partial disability benefits the difference between the amount payable under Maryland Code, Article 101, § 36(2) and the full weekly wage paid to them under the contract.[2] Commissioner Albert denied the requested set off against awarded permanent partial dis-

---

**2.** Oros' actual weekly wage was $290.00; the amount payable to him under Article 101, § 36(2) was $194.00—a difference of $96.00 weekly.
   Smith's weekly wage was $286.50; the amount payable to him under Article 101, § 36(2) was $191.00—a difference of $95.50 weekly.

ability benefits in the case of Fischer.[3] Appeals to the Circuit Court for Baltimore City were taken by the losing party in each case.

The Circuit Court for Baltimore City by separate orders dated February 17, 1983 granted motions for summary judgment filed by the City. Oros, Smith and Fischer filed separate appeals to the Court of Special Appeals of Maryland. The cases were consolidated in that court, were heard together, and resulted in reversal of the judgment of the circuit court. *Oros, et al. v. City of Baltimore*, 56 Md.App. 685, 468 A.2d 693 (1983). We granted certiorari to consider the question.

The regulation governing entitlement to and continuance of full salary payments to police officers of the City during periods of temporary total disability is to be found in Police Department, Baltimore, Maryland, General Order 3–79 dated 29 April 1979 and its anexes A through J as amended on 1 July 1979.[4]

These regulations in part here pertinent read as follows:
"POLICY

Baltimore Police Department employees are provided sick leave benefits in keeping with the following:
Under the direction of the Chief Police Physician all sworn personnel are entitled to sick leave as may be required to recover from illnesses or injuries.

\*     \*     \*     \*     \*     \*

PURPOSE

The purpose of this order is to recodify and promulgate existing departmental policies and procedures governing medical leave to include an amendment to policy proce-

---

**3.** Fischer's weekly wage was $308.09; the amount payable to him under Article 101, § 36(2) was $206.00—a difference of $102.09 weekly.

**4.** For authority to promulgate such regulations, *see Beca v. City of Baltimore*, 279 Md. 177, 180–81, 367 A.2d 478, 480 (1977).

dure *governing the commencement and duration of paid sick leave.*

## MEDICAL SECTION

\*    .\*    \*    \*    \*    :

### RESPONSIBILITIES

Maintains medical records of all members including time lost due to illness, injury or disability.

\*    :    \*    \*    \*    :

Determines whether reported injuries or illnesses are line of duty or non-line of duty.

Provides medical treatment and performs surgical operations for line of duty injuries or illnesses and physical therapy treatment for members with residual medical problems resulting from line of duty injuries.

.\*    :    \*    \*    \*    \*

The Chief Police Physician shall determine if a member is temporarily incapable of performing any departmental duty due to a medical incapacitation.

:    :    \*  ,,

(Emphasis added.)

▮ For the purposes of this decision, we shall assume that the respective terms of the statute, "temporary total disability" and of General Order 3–79, "temporarily incapable of performing any departmental duty due to a medical incapacitation" are identical in meaning. We make that assumption because it is undisputed that all appellees were paid full wages during every period of temporary disability. Otherwise stated, it is conceded that the benefits provided by General Order 3–79 during temporary total disability exceed the benefits provided by Article 101, § 36(2) for temporary total disability *under the facts of this case* [5] and

---

**5.** It will have been observed that the *Purpose* section of General Order 3–79, *supra*, stated that it was intended "to include an amendment to

thus discharged the City under § 33(c) *supra* from any obligation to pay benefits for temporary total disability.

The City maintains, however, that excess benefits provided under General Order 3–79 for temporary total disability build up into a fund that may be set off against benefits payable for permanent disabilities under Article 101, § 36(3) and (4).

■ We pass then to the question whether § 33(c) authorizes the City (or other governmental or quasi-governmental agency included within § 21(a)(2))[6] to set off the difference between the wages actually paid and the benefits prescribed by § 36(2) during the period of temporary total disability against its statutory obligation under Article 101 for payment of benefits for permanent partial disability. We think not.

In *Gorman v. Atlantic Gulf & Pacific Co.*, 178 Md. 71, 12 A.2d 525, 529 (1940), a claimant had been paid $3,400.00 in benefits during his temporary total disability. He thereafter was awarded compensation for permanent disability

---

policy and procedure governing the *commencement and duration of paid sick leave.*" (Emphasis added.) Article 101, § 36(2), on the other hand, since the amendment to the subsection by ch. 402 of the Acts of 1971, requires payment for continuing temporary total disability without time limitation. Initial determination whether the benefits for temporary total disability provided by General Order 3–79 equal, exceed or are less than the benefits for temporary total disability provided by Article 101, § 36(2) must, therefore, be made on a case to case basis. *See Jackson v. Beth-Fair Shipyard,* 185 Md. 335, 339, 44 A.2d 811, 812 (1945), wherein it was said: "Temporary, as distinguished from permanent, disability, under the Workmen's Compensation Act, is a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit."

6. Section 21(a)(2) in pertinent part reads as follows:
"(a) Coverage of employers.—The following shall constitute employers subject to the provisions of this act:

. . . .

"(2) The State, any agency thereof, and each county, city, town, township, incorporated village, school district, sewer district, drainage district, public or quasi-public corporation, or any other political subdivision of the State that has one or more employees subject to this act."

benefits that increased the entirety of his benefits to a total of $7,100.00. The employer and insurer urged that the maximum compensation to which he was entitled was the sum of $5,000.00—the amount then payable for permanent total disability. We rejected this contention.

Judge Parke, speaking for this Court in *Gorman, supra,* considered in depth the intent of the Legislature in its classification of benefits.

In the course of his opinion Judge Parke said:

"A temporary total disability and a permanent total disability, a temporary partial disability and a permanent partial disability, are four different compensable results; and the measure of the compensation to be appropriately awarded in these instances as they may occur is not for the court to create nor to change. The court must declare the legislative intention as expressed by the statute to the exclusion of the suggested interpolations." *Gorman,* 178 Md. at 75, 12 A.2d 525.

After emphasizing that the Workmen's Compensation Act contained a provision that:

*"The compensation for the foregoing specific injuries shall be paid in addition to, and consecutively with, the compensation hereinbefore provided in Sub-Section 2 of this Section."*[7] *Gorman,* 178 Md. at 76, 12 A.2d 525 (emphasis added),

he added:

"The specific mandate of this act is too clear for doubt. The workman, who has sustained a temporary total disability and a permanent partial disability of a specific kind

---

7. Judge Parke thereafter discussed the legislative history of this quoted part of the Workmen's Compensation Act and pointed out that the wording of the sentence "completely and finally eliminated ... [a prior provision to the contrary]" 178 Md. at 76–77, 12 A.2d 525. We observe that the quoted language remains in the Act. *See* Art. 101, § 36(4)(b).

or nature, receives a separate award for each such disability." *Gorman*, 178 Md. at 76, 12 A.2d 525.

.   .   .   .   .

"It may be added that this period of temporary total disability is the healing period, or the time during which the workman is wholly disabled and unable by reason of his injury to work. It is, therefore, a separate and unitary period of compensation, and as such is distinguished from a permanent partial disability.

"So, there may be distinct, consecutive, and cumulative awards of compensation for the periods of temporary total disability and of permanent partial disability, under the Maryland Act, and other similar statutes. In illustration of this fact, it is stated by a careful and accurate source that 'Schedule provisions may provide for payments in addition to the period of total disability (healing period), or may cover the entire allowance for the injury other than medical aid. Such payments are exclusive in nineteen States, and are in addition to the healing period in twenty-five.' Maryland is one of the states in the larger group. *Workmen's Compensation Legislation of the United States and Canada as of July 1, 1926.* Bulletin No. 423 of the United States Bureau of Labor Statistics, pp. 68, 69." *Gorman*, 178 Md. at 78, 12 A.2d 525.

In *Jackson v. Beth-Fair Shipyard*, 185 Md. 335, 44 A.2d 811 (1945), a claimant who received benefits for temporary total disability from July 12, 1942, to July 11, 1944, was found to be permanently totally disabled and awarded compensation benefits of $6,000.00 (then the amount provided under the Workmen's Compensation Act for such permanent total disability). The employer and insurer sought credit for the temporary total disability benefits against the award of $6,000.00 for permanent total disability.

In *Jackson* we carefully reviewed our prior decision in *Gorman, supra,* fully approved its holding and extended its effect specifically to cases involving permanent total disabil-

ity. We quoted with approval the holding of the Court in *Chicago Circular Advertising Service, Inc. v. Industrial Commission,* 332 Ill. 156, 162, 163 N.E. 408, 410 viz: "The period of temporary total incapacity should not include any part of the period wherein the incapacity has become permanent." 185 Md. at 339, 44 A.2d at 812.

*See also Sea Gull Specialty Co. v. Snyder,* 151 Md. 78, 134 A. 133 (1926), wherein we held that the Legislature did not intend the death benefits payable to a dependent to be reduced by disability benefits received by the worker during his lifetime.

The City argues that its cause is aided by prior decisions involving Article 101, § 33 namely, *Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979); *Feissner v. Prince George's County,* 282 Md. 413, 384 A.2d 742 (1978); *Mazor v. State Dept. of Correction,* 279 Md. 355, 369 A.2d 82 (1977), and *Nooe v. City of Baltimore,* 28 Md.App. 348, 345 A.2d 134 (1975), *cert. denied,* 276 Md. 748 (1976). Its reliance upon those cases is misplaced.

In *Frank,* the evidence showed that benefits provided by Baltimore County were "far in excess of the benefits provided by Workmen's Compensation"; in *Feissner,* wherein the evidence showed that the disability retirement pay exceeded the maximum compensation awarded by the Commission, we rejected claims for counsel fees under Commission awards that Prince George's County had refused to pay; in *Mazor,* it was conceded that "his disability benefits are equal to or better than any benefits [8] he could receive from Workmen's Compensation"; in *Nooe,* the Commission found a permanent partial disability under "other cases" and that the benefits provided by Baltimore City were "equal to or better than any benefit furnished by the employer," the latter finding being conceded in the cause. The sole contention of the claimant in *Nooe* was that "the

---

8. Our decision in *Mazor* held that the insurer, although not specifically mentioned in § 33, was discharged from liability along with the § 21(a)(2) employer and that § 33 is not limited to death cases.

provisions of § 33 apply only in death cases." The contention was rejected.

■ We find nothing in the provisions of § 33 to indicate that the Legislature intended to permit a § 21(a)(2) employer to provide an excess benefit for but one of the disabilities provided in Article 101, § 36 and then to suggest it has provided a largess that would lessen or eliminate its liability for the other benefits it is bound by the Act to furnish. Such a contention flies in the teeth of the basic legislative design—that an injured worker (or his dependents) is entitled to receive seriatim the benefits for each of the separate disabilities as were caused by the nature and extent of his injury.

■ The sub-section does no more than to discharge those employers brought within the Workmen's Compensation Act by § 21(a)(2) (of which the City is one) from liability *for such of the separate and distinct obligations imposed by the Act as to which it has provided equal or greater benefits*. Section 33(c) should not be interpreted to mean that other separate and distinct benefits provided by the Act should be diminished or, indeed, possibly eliminated entirely because such an employer furnished greater benefits for one of its obligations under the Workmen's Compensation Act.

■ As we observed in *Gorman, supra*, "the measure of the compensation to be appropriately awarded in these instances as they may occur is not for the court to create nor to change." 178 Md. at 74, 12 A.2d 525.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.

PETITIONER TO PAY COSTS.