524 A.2d 61

**Theodore E. POTTER**

v.

**BETHESDA FIRE DEPARTMENT, INCORPORATED et al.**

**No. 147 Sept. Term, 1986.**

Court of Appeals of Maryland.

April 20, 1987.

348

Joseph F. McBride (Joseph F. McBride, P.A. and John C. Hanrahan, on the brief), Silver Spring, for appellant.

Anthony M. Ventre, Asst. Co. Atty. (Paul A. McGuckian, Co. Atty., Joann Robertson, Sr. Asst. Co. Atty., on the brief for appellee Bethesda Fire Dept., Inc. and Montgomery County, Md.

Richard W. Galiher, Jr., Galiher, Clarke & Galiher, on the brief, for appellee Bethesda Fire Dept., Inc., and Ins. Co. of North America, Rockille.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ. and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

## I

This case has been struggling through the Workmen's Compensation Commission and various courts of this State since Theodore E. Potter was injured in January 1978. Its history to 5 February 1985 was recounted in *Potter v. Bethesda Fire Dept., Inc.*, 302 Md. 281, 487 A.2d 288 (1985).

Appellant, Theodore E. Potter, was a salaried firefighter employed by Bethesda Fire Department, Inc. He filed a claim with the Workmen's Compensation Commission as a result of injuries sustained by him. Appellee, Insurance Company of North America, was the insurer of the employer for that injury. Potter reinjured his back. Montgomery County as a self-insurer was the employer's insurer for that injury. Potter retired under the Montgomery County disability retirement program. Appellees, Bethesda Fire Department, Inc., Montgomery County, and Insurance Company of North America, contended they were entitled to a set-off pursuant to Maryland Code (1957, 1979 Repl.Vol.) Art. 101, § 33(c) and (d). Their contention was based on the fact that Potter was receiving disability retirement benefits from Montgomery

County in excess of any benefits that he was eligible to receive as workmen's compensation. The Commission denied the right of set-off. Bethesda Fire Department, Inc., and Montgomery County appealed the Commission's decision to the Circuit Court for Montgomery County. Named defendants in the appeal were Insurance Company of North America and Potter.

The fire company and Montgomery County filed a motion for partial summary judgment based on the claimed statutory set-off. Insurance Company of North America subsequently joined in this motion, and asked that the ruling also apply with respect to the claim in which it was previously ordered to pay benefits for 20% industrial loss of use.

The matter came on for hearing in the circuit court. It ordered that the motion for partial summary judgment be granted "on the question of the applicability of the set-off provisions of Article 101, Section 33 ... to the benefits awarded by the Workmen's Compensation Commission under its order dated October 6, 1982, and Amended Order of April 20, 1983." It further ordered, stating "that there appears to be no just cause for delay in entering judgment in this action," that "the Clerk of the Court [was] ... directed to enter judgment in favor of the employer, Bethesda Fire Department, Inc., and the insurer, Montgomery County, Maryland, on their entitlement to a set-off pursuant to Article 101, Section 33 of the Annotated Code of Maryland." Insofar as the record before us reflects, the matter otherwise remains open on the docket in the Circuit Court for Montgomery County.

Potter appealed to the Court of Special Appeals. That court affirmed in *Potter v. Bethesda Fire Dept., Inc.*, 59 Md.App. 228, 474 A.2d 1365 (1984). We granted Potter's petition for a writ of certiorari in order that we might address the important public question of whether Bethesda Fire Department, Inc., is a quasi-public corporation within the meaning of Code (1957, 1979 Repl.Vol.) Art. 101, § 21(a)(2). *Potter v. Bethesda Fire Dep't, Inc.*, 301 Md. 43, 481 A.2d 803 (1984). 302 Md. at 483–484.

We did not reach the important public question. We found that the Court of Special Appeals was without jurisdiction to entertain the appeal. The partial summary judgment from which the appeal was taken was not a judgment certifiable for appeal by then Rule 605(a). We were obliged to remand the case to the Court of Special Appeals with direction to dismiss the appeal. *Id.* 302 Md. at 284–287, 487 A.2d 288.

The open questions were resolved in special verdicts by a jury in the Circuit Court for Montgomery County. The jury found that 47% of industrial loss was due to the first injury, that 23% was due to the second injury and that no industrial loss was due to pre-existing conditions. Judgment to that effect was entered.

Potter and the Insurance Company of North America noted an appeal. Subsequently the Court of Special Appeals dismissed the appeal of INA at the insurance company's request. INA explained that the subject of its appeal was the off-set for pension benefits and, as it understood this issue was the subject of Potter's appeal, its appeal was superfluous.

Potter and Montgomery County jointly filed a petition for a writ of certiorari. We granted the petition before resolution of the appeal by the Court of Special Appeals, and the writ was issued on our order. We now address "the important public question" which prompted our grant of the first petition for a writ of certiorari, namely, "whether Bethesda Fire Department, Inc., is a quasi-public corporation within the meaning of Code (1957, [1985] Repl.Vol.) Art. 101, § 21(a)(2)." *Potter v. Bethesda Fire Dept., Inc.*, 302 Md. at 284, 487 A.2d 288.

## II

Md.Code (1957, 1985 Repl.Vol.) Art. 101, § 33 provides, in relevant part:

(c) Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or

benefits are furnished employees of employers covered under § 21(a)(2) of this article, ... the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer and the Subsequent Injury Fund for any benefit under this article.

Code, Art. 101, § 21 provides:

(a) *Coverage of employers.*—The following shall constitute employers subject to the provisions of this act:

(1) Every person that has in the State one or more employees subject to this act.

(2) The State, any agency thereof, and each county, city, town, township, incorporated village, school district, sewer district, drainage district, public or quasi-public corporation, or any other political subdivision of the State that has one or more employees subject to this act.[1]

*See* Art. 101, § 67(2) for the definition of "employer." It is in accord with § 21(a).

"The cardinal rule in the interpretation of statutes is to effectuate the real and actual intention of the Legislature."

---

1. The designation of employers subject to the provisions of the Workmen's Compensation Act first appeared in this form in Acts 1970, ch. 741 (House Bill 729). Theretofore Art. 101, § 21 of the Code spoke of the applicability of the provisions of the Act in terms of extra-hazardous employments. There were some 50 such employments from time to time listed with a catch-all clause: "[i]n addition to the employments set out in the preceding paragraphs, this article is intended to apply to all extra-hazardous employments not specifically enumerated herein, and to all the work of an extra-hazardous nature." § 21(50).

Under the present law, the coverage of employees is prescribed by Md.Code (1957, 1985 Repl.Vol.) Art. 101, § 21(b). *See* § 67(3) for the definition of "employee." It follows § 21(b).

We note that Art. 101, § 21(b)(4) provides, *inter alia,* that

every person who is a member of a volunteer fire or rescue squad or police department shall be deemed for the purpose of this act, to be in the employment of the political subdivision of the State where the department is organized,

except in certain counties of which Montgomery County is not one. *Id.* § 21(c)(5). *Compare* Montgomery Co., Md., Code (1972, 1984 Repl.Vol.) § 21–4M(g) (employees of independent fire and rescue squad corporations in Montgomery County chartered to provide fire and rescue services are *not* county employees).

*State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976).

> Of course, a statute should be construed according to the ordinary and natural import of its language, since it is the language of the statute which constitutes the primary source for determining the legislative intent. *Id.* (citations omitted).

Therefore,

> [w]here there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intention of the Legislature. Thus, where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning. *Id.* at 421–422, 348 A.2d 275 (citations omitted).

But,

> "[a]dherence to the meaning of words does not require or permit isolation of words from their context 'xxx [since] the meaning of the plainest words in a statute may be controlled by the context. . . .' " In construing statutes, therefore, results that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language, with the real legislative intention prevailing over the intention indicated by the literal meaning. *Id.* at 422, 348 A.2d 275 (citations omitted).

It is also a well settled precept that

> statutes are to be construed reasonably with reference to the purpose to be accomplished, and in light of the evils or mischief sought to be remedied; in other words, every statutory enactment must be "considered in its entirety, and in the context of the purpose underlying [its] enactment." *Id.* at 421, 348 A.2d 275 (citations omitted).

Applying these precepts, we need not look beyond the language of the statute. Section 21(a)(1) concerns private

employers. Section 21(a)(2) concerns public employers. In the latter section "quasi-public corporation" appears amidst certain other designations. Common to all of those other designations is that they are governmental in nature. *See* 1 E. McQuillen & J. Dray, *The Law of Municipal Corporations* §§ 1.19–1.20, 2.03–2.03a, 213 (3rd ed. 1971); H. Brune, *Maryland Corporation Law and Practice* § 2 (rev. ed. 1953); 1 A. Machen, *Modern Law of Corporations,* § 29 (1908). It is self evident that the State, any agency of the State, a county, a city, a town, a township, an incorporated village, and a public corporation are each within the category of public and governmental. A school district, sewer district and drainage district and other "special function districts," are considered to be public and governmental bodies. *See* O. Reynolds, *Handbook of Local Government Law* §§ 11–12 (1982); 3 A. Antieau, *Local Government Law* § 30 D. 00 (1987); McQuillen & Dray §§ 2.28–2.29. A political subdivision of the State is likewise public and governmental. *See, e.g.,* Md.Code (1957, 1987 Repl.Vol.) Art. 24, § 2–101(a)(4) (" 'Political subdivision' includes: (i) A county; (ii) A municipal corporation in the State; (iii) A special taxing district in the State; and (iv) A public corporation of the State."); Md.Code (1977, 1986 Cum.Supp.) § 1–101(k) of the Transportation Article (" 'Political subdivision' includes: (1) Any county or municipal corporation; and (2) Unless the context requires otherwise, any special taxing district.")

■ Unlike the other designations in § 21(a)(2), a "quasi-public corporation" is not *per se* public or governmental. On its face, the term connotes that it is not a public corporation but a private one. But "quasi" indicates that the private corporation has "some resemblance (as in function, effect or status)" to a public corporation. Webster's Third New International Dictionary (1981). In other words, "quasi" bespeaks "that one subject resembles another, with which it is compared, in certain characteristics, but that there are intrinsic and material differences between them." Black's Law Dictionary (5th ed. 1979). The language of § 21(a)(2) is free from obscurity or ambiguity; it leaves no

room for a notion that the Legislature in its enumeration of employers covered by the Workmen's Compensation Act, intended, in that subsection, to go beyond government employers.   Section 21(a)(2) and § 33(c), read together, show that "quasi-public corporation" is clearly intended to be of this genus.   Its designation is immediately followed by the phrase "or *any other political subdivision* of the State. . . ." (emphasis added).   We have considered it in this light in the past.   In *Frank v. Baltimore County*, 284 Md. 655, 399 A.2d 250 (1979), we spoke of § 33 as applying to "government employees," *id.* at 659, 399 A.2d 250, and to "public employers," *id.* at 661, 399 A.2d 250.   In *City of Baltimore v. Oros*, 301 Md. 460, 483 A.2d 748 (1984), we indicated that an employer under § 21(a)(2) was a "governmental or quasi-governmental agency."   *Id.* at 466, 483 A.2d 748.   The short of it is, that in enacting § 21(a)(2), the legislative intent, evident on the face of the statute, was to scoop up all the various and sundry bodies of a governmental nature in the diverse system of government existent in Maryland, starting with the State itself, and flowing down to the lowest echelon, and make each of them "employers" in the contemplation of the Workmen's Compensation Act when such employer had one or more employees.

The legislative intent in enacting § 21(a)(2) and § 33(c) then becomes luminously clear.

> [T]he scheme that unmistakenly emerges is that the General Assembly wished to provide only a single rcovery for a single injury for government employees covered by both a pension plan and workmen's compensation. *Frank v. Baltimore County*, 284 Md. at 659, 399 A.2d 250.

Consequently,

> when disability pension benefits exceed workmen's compensation the latter shall be completely eliminated. . . . *Id.*

Therefore,

> any employee benefit provided by a public employer, "whether as part of a [statutorily adopted] pension sys-

tem or otherwise," is sufficient to bring section 33 into play, and that under the juxtaposition provided in that section there exists no reason why the employer should not be discharged from his compensation obligation whenever the total amount of any employee benefit, whether furnished entirely or partially by employer funds, is equal to or better than the workmen's compensation award. *Id.* at 661, 399 A.2d 250 (footnote omitted).

In *Mazor v. State, Dep't of Correction,* 279 Md. 355, 369 A.2d 82 (1977), we determined that, in such circumstances, "§ 33 entitles the insurer, as well as the employer, to a discharge of its obligation." *Id.* at 360, 369 A.2d 82. It follows that if the Bethesda Fire Department, Inc. (BFD) was a covered employer under § 21(a)(2), it and its insurers were entitled to a set-off pursuant to § 33(c). But if BFD was not within the ambit of § 21(a)(2), § 33(c) does not apply, and Potter may receive both workmen's compensation and benefits under the county's pension plan.

### III

It is readily apparent that for BFD to be within the ambit of § 33(c) it must qualify as a "quasi-public corporation." It obviously does not fall within the other classifications of § 21(a)(2). Therefore, we must determine what a quasi-public corporation is in the contemplation of § 21(a)(2) in order to ascertain whether BFD is within that category.

"Quasi-public corporation" is not defined in Article 101 or elsewhere in the Maryland Code nor in the organic laws of this State.[2] In the last 50 years, the term "quasi-public

---

2. "Quasi-public corporation" appears in four other articles of the Maryland Code and in three articles of the Constitution of Maryland. *See* Code (1957, 1985 Repl.Vol.) Art. 89, § 45; Code (1985) § 14–801(b) of the Tax-Property Article; Code (1982, 1986 Cum.Supp.) § 6–401(d)(4) of the Health-Environmental Article; Code (1957, 1986 Repl.Vol.) Art. 41, § 13–105(7); Md. Const. art. III § 61(a)(2); *id.* art. XI–B § 1(b); *id.* art. XI–C § 1(b). In each instance it is linked with "public corporation," set out thus, "public or quasi-public corporation."

corporation" has appeared in only twelve of the opinions of this Court (in addition to *Potter v. Bethesda Fire Dept., Inc.*, 302 Md. 281, 487 A.2d 288),[3] and in two opinions of the Court of Special Appeals (aside from its aborted opinion in *Potter v. Bethesda Fire Dept., Inc.*, 59 Md.App. 228, 474 A.2d 1365).[4] None of the opinions furnishes a workable definition or give a satisfactory clue as to what is definitively deemed to be a quasi-public corporation, except as to certain railroads. Perhaps this is so because the term defines itself. A quasi-public corporation is by its very words, not a public corporation, and, thus is a private corporation. But the word "quasi," as we have seen, denotes that it has the characteristics of a public corporation in function, effect or status. That view is in tune with the scholars.

There are corporations which, when tested by the definitions [of public and private corporations], fall within the class of private corporations, but which, nevertheless, by reason of the nature and extent of their operations and effect on the welfare of the public at large, have been styled quasi-public corporations. 1 W. Fletcher & C. Swearingen, *Cyclopedia of the Law of Private Corporations* § 63 at 600 (footnote omitted) (1983 Rev.Vol.).

"Quasi-public corporations have been defined as private corporations which have accepted from the state the grant

---

**3.** *City of Baltimore v. Oros,* 301 Md. 460, 466, 483 A.2d 748 (1984); *Davis v. State,* 294 Md. 370, 380, 451 A.2d 107 (1982); *Eberhart v. City of Baltimore,* 291 Md. 92, 113, 433 A.2d 1118 (1981); *Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673, 687, 404 A.2d 1064 (1979); *Frank v. Baltimore County,* 284 Md. 655, 660, 399 A.2d 250 (1979); *Mazor v. State,* 279 Md. 355, 359, 369 A.2d 82 (1977); *D.C. Transit Systems v. S.R.C.,* 259 Md. 675, 690, 270 A.2d 793 (1970); *Garrett v. Gray,* 258 Md. 363, 369, 266 A.2d 21 (1970); *East Wash. Railway v. Brooke,* 244 Md. 287, 293, 223 A.2d 599 (1966); *Ma. & Pa. RR. Co. v. Mer.-Safe, Etc. Co.,* 224 Md. 34, 39, 166 A.2d 247 (1960); *Baltimore City v. Balto. Gas Co.,* 221 Md. 94, 97, 156 A.2d 447 (1959); *Armstrong v. Stiffler,* 189 Md. 630, 632, 56 A.2d 808 (1948).

**4.** *Tsottles v. City of Baltimore,* 55 Md.App. 58, 61, 460 A.2d 636 (1983); *Nooe v. City of Baltimore,* 28 Md.App. 348, 352, 345 A.2d 134 (1975).

of a franchise or contract involving the performance of public duties." *Id.* at 601 (footnote omitted).

It is not necessary that its charter should have originally contained a grant of power of a nature such as to impose this character upon the corporation, but the nature of the business conducted may later become so affected with a public interest that the corporation thus becomes quasi-public, and it must have entered upon the public service, that is, service to the general public. *Id.* (footnotes omitted).

Fletcher addresses fire departments specifically:

A corporation organized for the protection of the property of fellow citizens from fire is not for private gain and profit of its members but for the public benefit. Accordingly a fire engine company is considered to be a public or quasi-municipal corporation.... *Id.* at 602 (footnotes omitted).

18 Am.Jur.2d *Corporations* (1985), puts it this way:

The term "quasi-public corporation" is sometimes applied to otherwise private corporations engaged in the business of providing goods and services of a peculiarly public nature. *Id.* § 31 at 825–826 (footnote omitted).

However, it is clear with regard to § 21(a)(2) that the Legislature impressed a further limitation on the meaning of a quasi-public corporation. It confined such corporations to those of a governmental nature. Not all quasi-public corporations are governmental in nature, but when the types of employers designated as covered by the Act are considered with the immediately following phrase, "or any other political subdivision of the State ...," it is obvious that the Legislature intended to confine quasi-public corporations to those of a governmental nature.

## IV

Having determined the nature of a quasi-public corporation in the contemplation of § 21(a)(2), we look to see whether BFD falls into that class.

A

Some twenty-five years ago the Montgomery County government was the subject of a comprehensive survey. *See* Public Administration Service, *The Government of Montgomery County, Maryland* (1962). With respect to fire protection, it was recommended that there be a "complete amalgamation of the fire service into the county government." *Id.* at 129. The report explained:

> the evident fact that the present system of loosely coordinating 16 [ (now 18) ] independent corporations through a collegial body—the Fire Board—has about reached its limit as an organizational device, and a fully centralized organization is necessary to meet growth problems and to make necessary improvements. *Id.* at 133.

The survey concluded that "the county government would appear to be the logical place to vest responsibility for fire protection." *Id.* at 128. The report recognized that in many areas "Montgomery County has not accepted the idea that fire service is a community function," *id.* at 127, and it enumerated the major problems, *id.* at 127–128, and the major obstacles, *id.* at 129, to the realization of the concept. The anticipated opposition to fire protection being a completely county function proved real. There ensued a long and apparently, at times, bitter fight. Finally, in 1980, the Montgomery Office of Public Information reported to the people:

> A product of more than one year of Executive and Council worksessions and extensive consultations with both volunteer and paid firefighters, legislation to reorganize the fire service was passed in early May. The legislation was characterized by County officials as preserving important decentralized features of the old system, while providing for County-wide oversight and coordination of a newly reorganized fire and rescue service. Montgomery County Office of Public Information, *Report to the People* 10 (1980).

As indicated in the Report, the legislation reflected a compromise between the complete amalgamation of the fire protection services into the county government and the retention of such services in the independent corporations.

### B

■ We examine the status, under the present law, of the independent fire and rescue squad corporations in Montgomery County which are privately chartered but which provide fire and rescue services. *See* Montgomery County, Md.Code (1972, 1984 Repl.Vol.), hereinafter sometimes referred to as "MC Code," § 21–4A(c). We do so in the light of MC Code, ch. 21, entitled "Fire and Rescue Services," and other relevant chapters of that code.

The county council expressed its belief that "ultimate responsibility for public safety through fire, rescue and emergency services rests with the county government." MC Code § 21–4A(a). It announced that it was the legislative intent

> to provide for adequate public safety, health and welfare through a fire, rescue and emergency medical services program that is highly competent, efficiently delivered, equitably administered and which utilizes both career and volunteer personnel. *Id.*

It declared that to achieve the objectives "a combined system of public and private resources is essential. . . ." *Id.*

> To that end
>
> [t]he eighteen (18) independent fire departments and rescue squad corporations in existence on July 30, 1980 [ (BFD is one) were] authorized to provide fire, rescue and/or emergency medical services within the frame work established by [Chapter 21], by other applicable law and by the county-wide policies and regulations established by the [fire and rescue] commission, § 21–4D.

The public safety functions of the corporations [5] were specifically laid out. They included all or some of the following:

(a) Fire suppression and related activities;

(b) Fire prevention activities, under operational guidelines adopted by the commission and supervised by the director;

(c) Rescue activities; and

(d) Emergency medical services. *Id.*

However, the county council declared that chapter 21 shall be construed to effectuate its intent that ... the local corporations shall remain autonomous and independent corporate entities, § 21-4M(g).

Furthermore,

[n]othing in this subtitle shall be construed to mean that any employees of the local corporations are county employees either on a de jure or de facto basis nor that the county government or any representative of the county government shall have authority over: (1) who is employed; (2) who is terminated; (3) duty assignments; and (4) day-to-day supervision. *Id.*

Further, the chapter was also to be construed to effectuate the intent that "career personnel employed by local corporations and paid with tax funds are not county employees...." *Id.*[6]

BFD is privately chartered. The county declared expressly that it retains its independent corporate entity. But it was designated by the county to provide services necessary

---

**5.** "Corporation" or "local corporation" as used in chapter 21 of the MC Code "shall mean any of the independent fire and rescue squad corporations in Montgomery County chartered to provide fire and rescue services," § 21-4A(c).

**6.** Volunteer firemen in Montgomery County are employees of the political subdivision of the State where the department of which they are members is organized. *See* note 1 *supra.* For provisions as to personnel administration of volunteer members of the independent fire corporations see the Montgomery County Code § 21-4N through § 21-4P.

to the general welfare of the public. Although BFD retains its autonomy, because the services the county has entrusted to it are so important and necessary to all of the people, performance of those services are, to a substantial extent, overseen and controlled by the government. We note some examples. A county Department of Fire and Rescue Services was established. MC Code § 2–39A(a). Its functions include the administration of all laws related to fire prevention, § 2–39A(b)(1), and the local corporations were directed to assist "in the exercise of fire prevention responsibilities," *id.* A fire and rescue commission was established, § 21–4B(a). It is "to provide the policy and regulatory framework for ... fire, rescue and medical service operations," § 21–4B(e), and the corporations must furnish such information on aspects of fire, rescue or emergency medical services requested by the commission, § 21–4B(k)(1), on pain of having their tax funds impounded by the county executive for noncompliance, § 21–4B(k)(3). A fire board was established, § 21–4C(a). Its members include the chief of each corporation within the county. *Id.* Its duties include electing five of the seven members of the commission, § 21–4C(b)(1) and advising the commission on any matters relating to the fire, rescue and emergency services, § 21–4C(b)(3). Section 21–1 appears to prohibit any fire company, fire department or rescue squad from changing the location of its facilities within the county without receiving prior approval of the county council in the county six-year capital improvements program. The response areas for all corporations are only those as are established from time to time by the commission, § 21–4G(a). The commission controls the communications and dispatch procedures for all corporations, § 21–4H. The commission has the obligation to adopt a master fire defense plan, § 21–4I, and to provide for the transfer of apparatus in an emergency, § 21–4J. The county executive is authorized "to assume operational and administrative command of any corporation ... supported in whole or in part with tax funds upon a finding by the county executive of a public emergency due to the

inability or unwillingness of a corporation to provide fire, rescue or emergency medical services," § 21–4K. "Title to fire, rescue and emergency medical service apparatus and facilities, purchased in whole or in part with any tax funds prior to July 30, 1980, may be retained by the corporations unless otherwise provided in the appropriations therefor," § 21–4U(a). But all apparatus and facilities purchased with tax funds after that date shall be titled in the name of the county and assigned according to the master plan for apparatus, § 21–4U(b). The sale or other disposition of any apparatus or facilities "must be approved by the commission and the chief administrative officer *to ensure that such sale or other disposition does not adversely affect the public interest,*" § 21–4U(c) (emphasis added).

These examples of the supervision, oversight and control on the part of the government clearly indicate the peculiarly public nature of the duties performed by the "private" fire corporations in Montgomery County.[7] They also show that such corporations are, in fact, governmental in nature.

### C

By reason of their governmental nature, the extent of their public service duties and the beneficial effect their services have on the welfare of the people at large, the independent fire and rescue corporations in Montgomery County enjoy privileges, perquisites and rights not bestowed upon a private corporation.

All members of BFD are paid career employees; there are no volunteer firemen in the department. MC Code § 21–4M concerns career employees of the independent fire and rescue corporations. Subsection (a) provides:

---

**7.** We note that there is also a State Fire Commission. Md.Code (1957, 1986 Repl.Vol.) Art. 38A § 1 et seq. It touches on county fire prevention activities by way of membership, *id.;* regulations, § 3; workshops, § 6A; mutual aid agreements, §§ 37–38; and funds, §§ 45A–45D, for example.

The commission shall arrange with the county to provide as a service to local corporations the following services:

(1) Uniform administration and application of personnel regulations and policies.

(2) Consistent administration and application of a uniform pay plan and benefit program for all career personnel employed by the local corporations and paid with tax funds.[8]

(3) Disbursement of salaries and wages including withholding for taxes and fringe benefits through the county's payroll system.

(4) Review for consistency with applicable personnel regulations all personnel transactions involving career personnel employed by the local corporations and paid with tax funds.

(5) Use of the merit system protection board.

The county was authorized and empowered to install a system of health and life insurance and group hospitalization in cooperation not only with public employees, but also

with paid employees of quasi-public corporations engaged in the performance of governmental functions, such as fire departments.... MC Code § 20–37(b).

The county was further authorized and empowered to provide an adequate comprehensive insurance program including "comprehensive general liability [and] workmen's compensation ..." § 20–37(c). The insurance program may be provided by purchase of insurance coverage from insurance companies or it may be provided by a self-insurance program funded by appropriations by the county council or by a combination of purchased insurance coverage and self-insurance. *Id.* A self-insurance program was established, § 20–37(e).

---

8. "As used in [Chapter 21], 'tax funds' shall mean any or all county government revenues, including fire tax revenues." Montgomery Co. Code (1972, 1984 Repl.Vol.) § 21–4A(c).

Two classes of fire tax districts were created—consolidated and individual, § 21–13(a). Bethesda was included in a Consolidated Fire Tax District, § 21–13(a)(1). The county council was authorized and empowered to levy annually against all real and personal property assessed for county tax purposes within the respective fire tax districts, a tax for each district to produce an amount sufficient for the organization, operation and maintenance of fire, ambulance and rescue services, § 21–13(b) and § 21–4R(b). Each corporation supported in whole or in part with tax funds shall prepare its annual budget requirements, § 21–4Q(a), and the county council shall appropriate funds for fire, rescue and emergency services for the ensuing fiscal year, § 21–4Q(d). In the consolidated district, a single uniform tax shall be levied at a rate sufficient to provide funds for all corporations in the consolidated district, § 21–4R(b). For the distribution of fire tax funds to and for the benefit of the corporations and the disbursement of the funds, *see* § 21–4S.

Since the Bethesda Fire Department, Inc. is a quasi-public corporation within the meaning of § 21(a)(2) and has one or more employees subject to the Workmen's Compensation Act, it is an employer subject to the provisions of that Act. We so hold.

It follows that Potter, as a career employee of the Bethesda Fire Department, Inc., was qualified to receive compensation under the Workmen's Compensation Act for his work related injuries. As we have seen, he was also qualified, as a result of those injuries, to receive benefits under a part of the Montgomery County pension system. Thus, the provisions of Md.Code, Art. 101, § 33(c) were invoked. Inasmuch as the benefits received under the pension system exceeded the workmen's compensation awards, the liability or obligation of his employer and its insurers was fully discharged by payment of the pension benefits. That is to say, the Bethesda Fire Department, as Potter's employer, and Montgomery County and the Insurance Company of

North America, as the insurers of the fire department, were entitled to a set-off.   We so hold.

JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED;

COSTS TO BE PAID BY THEODORE E. POTTER.