526 A.2d 631
**Della L. NEWMAN**
v.
**SUBSEQUENT INJURY FUND, et al.**
**No. 1330, Sept. Term, 1986.**
Court of Special Appeals of Maryland.
June 9, 1987.

---

3. The case was overruled on another point in *Newman v. Kay,* 57 W.Va. 98, 49 S.E. 926 (1905). *See* 1 A.L.R.2d, *supra,* at 88–89 n. 6.

Cynthia S. Miraglia (Robert A. Flack and Ashcraft & Gerel, on the brief), Landover, for appellant.

John T. Beamer, II, Associate Co. Atty. (Larnzell Martin, Jr., Co. Atty. and Michael O. Connaughton, Deputy Co. Atty., on the brief), Upper Marlboro, for appellee, Prince George's County.

Argued before ALPERT, BLOOM and POLLITT, JJ.

ALPERT, Judge.

We are called upon to decide whether retirement pension benefits may be set off against Workers Compensation payments for permanent disability. The parties are in complete agreement as to the facts of the case and the question presented to us is purely one of law.

Appellant Della L. Newman (Claimant) was employed by Prince George's County (Employer) as a telephone operator. On May 25, 1982, she sustained a work-related injury to her hip. She filed a claim with the Workmen's Compensation Commission, which by an order dated June 3, 1983, found

her to have suffered an eighty percent (80%) industrial loss of use of her body; forty percent (40%) as a result of her fall and forty percent (40%) from a preexisting condition (hearing loss). The Commission awarded Claimant a permanent partial disability award of $89.00 per week for 400 weeks. Employer was ordered to pay the first 200 weeks of compensation, the Subsequent Injury Fund (the Fund), to pay the remaining 200 weeks.

In December of 1983, Claimant retired after twenty years with the County, thus becoming eligible for retirement benefits in the amount of $77.82 per week. Claimant's retirement was not related to her injuries and her retirement pay was based solely on length of service and age. In May, 1985 Employer stopped paying permanent partial benefits to appellant claiming that her retirement benefits offset the June 3, 1983 disability award.

A hearing was held before the Workmen's Compensation Commission on October 29, 1985, to consider claims by Employer and the Fund that they were entitled to a set-off pursuant to Article 101, Section 33(c) of the Maryland Code.[1] The Commissioner denied the setoffs. That decision was appealed to the Circuit Court for Prince George's

---

1. That section provides:
   Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished employees of employers covered under § 21(a)(2) of this article, the dependents and others entitled to benefits under this article as a result of the death of such employees, the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer and the Subsequent Injury Fund for any benefit under this article. If any benefits so furnished are less than those provided for in this article the employer or the Subsequent Injury Fund, or both shall furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required in this article. Provided, however, that the computation of the additional benefit shall be applicable only at the time of the initial award of benefits and shall not be applicable to any cost of living adjustments after the initial award and this provision shall be retroactive to benefits received before July 1, 1980.
   Md.Ann.Code Art. 101, § 33(c) (1985 Repl.Vol.).

County. On September 8, 1986, the court entered summary judgment in favor of Employer and the Fund awarding them a "setoff against any partial permanency award in an amount equal to the claimant's retirement pension benefits."

Claimant presents this issue to us:

Whether a retirement pension, awarded solely on the basis of age and length of service, constitutes "benefits furnished an employee" within the meaning of Section 33(c) of the Workmen's Compensation Article so as to entitle an Employer and the Subsequent Injury Fund to a setoff pursuant to that statute?

We answer that question in the affirmative. Consequently, appellees were entitled to their judgment as a matter of law, which judgment we shall affirm.

Claimant states that her retirement pay is an "age and length of service" benefit; her permanent partial disability award, on the other hand, is a "disability" benefit. Relying on *Oros v. City of Baltimore*, 56 Md.App. 685, 468 A.2d 693, *aff'd*, 301 Md. 460, 483 A.2d 748 (1984), she argues that Section 33(c) permits a setoff only of *similar benefits*. Claimant finds additional support for her argument in the language of § 33(c), which requires the employer and/or the Fund to furnish additional benefits "as will make up the difference between the [offsetting] benefit furnished and the *similar* benefit required by this article." (Emphasis supplied by appellant). Because her retirement pay is unrelated to her injury, she continues, it ought not reduce her permanent partial award which compensates her physical disability. The two benefits, she insists, are different and thus not subject to a Section 33(c) setoff as against each other.

We note forthwith that, in affirming this court's holding in *Oros*, the Court of Appeals chose not to adopt the reasoning upon which appellant hangs her hat. Thus, the argument urged by appellant finds no compelling support in Maryland case law. Nevertheless, we shall review the two

*Oros* decisions in order to illuminate our decision. That case involved three Baltimore City police officers who were injured in the course of their employment. Although temporary total disability benefits under the Workmen's Compensation Act were awarded to them, the officers did not collect those benefits. Instead, they collected sick leave, equal to full salary, while absent from work. Upon reaching their maximum cure, the officers petitioned the Workmen's Compensation Commission for permanent partial disability benefits. Each officer was awarded permanent partial benefits. As the result of appeals to the circuit court, the City received a setoff in each case against the *permanent* disability award, equal to the difference between the *temporary* disability award (awarded but not collected) and the accident leave rate paid in lieu of the temporary benefits.[2]

We concluded that the overage paid in accident leave benefits should not offset a subsequent permanent partial disability award. Our conclusion rested upon two grounds:

    1. Accident pay compensates *lost wages* and thus is dissimilar to permanent disability pay which compensates *lost earning capacity.* Section 33, however, allows setoffs only as between similar benefits. 56 Md.App. at 693, 468 A.2d 693.

    2. It would be absurd to conclude that the Legislature intended to permit public employers to "create a bank of credits from every fringe benefit it grants an employee to serve as markers against subsequently incurred statutory obligations." 56 Md.App. at 694, 468 A.2d 693;

Though it affirmed on writ of certiorari, the Court of Appeals did not adopt the "wage loss/earning capacity loss" rationale of this court. Rather, that court simply equated the accident pay with temporary total benefits, 301

---

**2.** Though not obliged to do so, the City paid accident leave benefits in excess of the temporary benefits awarded. It was this excess that the City sought to recapture through a setoff against the later awarded permanent benefits.

Md. at 465–66, 483 A.2d 748, and held that excess payment of temporary total benefits cannot offset a subsequent obligation to pay permanent partial benefits. The court reasoned:

> We find nothing in the provisions of § 33 to indicate that the Legislature intended to permit a § 21(a)(2) employer to provide an excess benefit for but one of the disabilities provided in Article 101, § 36 and then to suggest it has provided a largess that would lessen or eliminate its liability for the other benefits it is bound by the Act to furnish. Such a contention flies in the teeth of the basic legislative design—that an injured worker (or his dependents) is entitled to receive seriatim the benefits for each of the separate disabilities as were caused by the nature and extent of his injury.

301 Md. at 470, 483 A.2d 748. Thus, the court held that an earlier payment of temporary total disability benefits cannot offset a subsequent permanent partial obligation. The court reasoned that a claimant is entitled to receive *in sequence* each benefit to which he is entitled under the Workmen's Compensation Act. A permanent partial disability payment cannot offset a temporary total disability payment or vice versa. Having explained what § 33(c) does not allow, the court went on to explain what it does permit:

> The sub-section does no more than to discharge those employers brought within the Workmen's Compensation Act by § 21(a)(2) (of which the City is one) from liability *for such of the separate and distinct obligations imposed by the Act as to which it has provided equal or greater benefits.* Section 33(c) should not be interpreted to mean that other separate and distinct benefits provided by the Act should be diminished or, indeed, possibly eliminated entirely because such an employer furnished greater benefits for one of its obligations under the Workmen's Compensation Act.

*Id.* (emphasis in original). The court did not adopt the view that entitlement to a setoff depends on the similarity of benefit objectives. Instead, *Oros,* 301 Md. 460, 483 A.2d

748, stands for the more limited rule that two distinct Workmen's Compensation obligations may not offset one another where there is an excess payment under the first of the two obligations.

Whatever rule of law *Oros* sets in disputes involving setoffs between different Workmen's Compensation obligations, the case at bar presents no such dispute. Employer here does not seek to reduce one obligation under that Act because he made excess payments on another obligation imposed by the Act. Rather, Employer seeks a setoff as between distinct units in the overall system of wage loss legislation. He does not seek, as the employer did in *Oros*, to reduce a permanent partial obligation by an earlier temporary total payment. Rather, Employer seeks to reduce a Workmen's Compensation obligation by payments simultaneously made as part of a retirement pension unrelated to disability.

In construing § 33(c), we are called to effectuate the intention of the Legislature as plainly expressed in the language of the statute. *Nooe v. City of Baltimore,* 28 Md.App. 348, 345 A.2d 134, *cert. denied,* 276 Md. 748 (1976). That an employer is entitled to an offset equal to nondisability retirement pay is apparent from the plain language of § 33(c):

> Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a *pension system* or otherwise, any benefit or benefits are furnished employees of employers covered under § 21(a)(2) of this article, the dependents and others entitled to benefits under this article as a result of the death of such employees, the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer and the Subsequent Injury Fund for any benefit under this article.

Md.Ann. Code art. 101, § 33(c)(1985 Repl.Vol.) (emphasis added). We are aware that a court ought not resort to legislative history when construing unambiguous statutory

language. *See City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174 (1984). Nevertheless, we note in passing that the history of § 33 is silent on the question before us.

The coordination of Workmen's Compensation with other benefits and the rule precluding simultaneous dipping from two wells within the parsimonious system of wage loss protection has been explained:

Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost *due to the three major causes of wage-loss; physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable.* Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. This conclusion is inevitable, once it is recognized that workmen's compensation, unemployment compensation, nonoccupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle. If this is denied, then all coordination becomes impossible and social legislation becomes a grab-bag of assorted unrelated benefits.

*Larson, supra,* § 97 at 18–9 and 18–10 (emphasis added). Maryland subscribes to this theory:

[W]orkmen's compensation is one facet of an overall system of wage loss protection, ... the underlying principle of the system is to restore to the worker a portion of the wages lost by physical disability, unemployment, or old age. It follows that although two or more causes of wage loss may coincide, the benefits need not cumulate, for the worker experiences but one wage loss.

*Mazor v. Department of Correction,* 279 Md. 355, 363, 369 A.2d 82 (1977).

While we find no Maryland cases applying the one-wage-loss doctrine so as to reduce a Workmen's Compensation obligation by an amount equal to age retirement pension payments, the doctrine has repeatedly been cited in allowing a setoff equal to *disability* retirement payments. *See, e.g., Potter v. Bethesda Fire Dept., Inc.,* 309 Md. 347, 524 A.2d 61 (1987); *Harris v. City of Baltimore,* 306 Md. 669, 511 A.2d 52 (1986); *Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979); *Mazor supra; Nooe, supra.* Courts in other jurisdictions have followed this approach in awarding a setoff against a Workmen's Compensation award equal to a claimant's age or length of service benefits. *See, e.g., D.C. Transit Sys., Inc. v. Mussey,* 260 F.Supp. 310, 312–13 (D.D.C.1966); *Brock v. City of Boise,* 95 Idaho 630, 516 P.2d 189, 191 (1973); *State v. Industrial Comm'n,* 158 Ohio St. 240, 108 N.E.2d 317, 319 (1952). We believe that the plain language of Article 101 Section 33(c), unbelabored by the subtle distinction Claimant urges upon us, permits a setoff in Workmen's Compensation payments equal to sums paid pursuant to an age or length of service pension. To the extent that § 33(c) requires that the two benefits be "similar," we are mindful that both Article 101 benefits and nondisability retirement pay are wage loss benefits. *See Larsen, supra,* § 97.

Claimant's retirement pension constitutes a benefit furnished by her employer within the meaning of the setoff provisions of Article 101. Employer and the Fund are, therefore, entitled to a setoff pursuant to section 33(c) in the amount paid to Claimant under that pension. Inasmuch as Claimant's retirement pay is somewhat less than her permanent partial disability award, Employer and the Fund remain liable for the difference in weekly payments. Md. Code Ann. Art. 101, § 33(c) (1985 Repl.Vol.); *Frank,* 284 Md. at 659, 399 A.2d 250.

JUDGMENT AFFIRMED; COST TO BE PAID BY APPELLANT.