DONALD LOUIS MAZOR *v.* STATE OF
MARYLAND, DEPARTMENT OF
CORRECTION ET AL.

[No. 31, September Term, 1976.]

*Decided February 8, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Wilson K. Barnes*, with whom was *Franklin I. Freeman* on the brief, for appellant.

*Amicus curiae* brief filed by Baltimore City Fire Fighters, Local 734 and Baltimore City Fire Officers, Local 964, *John J. Dilli, Jr.*, on the brief.

*Amicus curiae* brief filed by Public Employees Council 67, AFSCME et al., *William H. Engelman, Paul D. Bekman* and *Kaplan, Heyman, Greenberg, Engelman & Belgrad* on the brief.

*Charles R. Goldsborough, Jr., Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *J. Howard Holzer, Assistant Attorney General*, on the brief, for State of Maryland, Department of Correction and State Accident Fund, two of appellees. *J. Kent Leonnig, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *H. George Meredith, Jr., Assistant Attorney General*, on the brief, for Subsequent Injury Fund, other appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal presents significant challenges to the constitutionality of Maryland Code (1957, 1964 Repl. Vol., 1972 Cum. Supp.), Art. 101, § 33, which reduces the workmen's compensation award of a public employee if he also receives benefits under his employer's pension plan. The Court of Special Appeals, in *Mazor v. Dep't of Correction*, 30 Md. App. 394, 352 A. 2d 918 (1976), interpreted the statute to apply to the facts presented by this case and further held that the statute was constitutional. We then granted Mazor's petition for a writ of certiorari and, since we agree with the Court of Special Appeals, we shall affirm.

The facts are simple and undisputed. On July 17, 1972, appellant, Donald Louis Mazor, then a 50-year old penitentiary guard who had been employed by the Department of Correction for more than six years, suffered severe injuries when he was stabbed and beaten during an incident at the House of Correction. Unable to return to work, Mazor retired on September 1, 1973.

As a condition to employment with the state, Mazor had become a member of the Employees' Retirement System of the State of Maryland. Code (1957, 1970 Repl. Vol., 1972 Cum. Supp.), Art. 73B, §§ 1-3. Consequently, a contribution towards an annuity had been regularly deducted from his salary, while the Department of Correction for its part had contributed to a separate pension fund. Art. 73B, § 14. Having determined that Mazor was totally and permanently incapacitated for duty as a result of his injury, the retirement system awarded him, effective upon his retirement, an accidental disability pension of $421.59 and an annuity of $26.75, for a total of $448.34 per month or $5,380.08 per year. Art. 73B, § 11 (6).

Mazor was also eligible for benefits under the workmen's compensation laws in the event he sustained injury in the course of his employment. Art. 101, §§ 21, 36. Workmen's compensation benefits are supported exclusively by the employer, not by the employee. Art. 101, §§ 15, 16, 51. If the employer carries insurance with the State Accident Fund, as

here, he pays premiums equal to a predetermined percentage of the payroll of his employees covered by Article 101, § 72. In any event, Mazor also applied for workmen's compensation benefits. At a hearing before the Workmen's Compensation Commission, Mazor's employer and the State Accident Fund, who, together with the Subsequent Injury Fund, are the appellees here, claimed that pursuant to Art. 101, § 33, award of the pension discharged their obligation to provide workmen's compensation benefits. That section, in pertinent part, provided:

> "Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished employees of employers covered under § 21(a)(2) of this article, the dependents and others entitled to benefits under this article as a result of the death of such employees, the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer for any benefit under this article. Should any benefits so furnished be less than those provided for in this article the employer shall be liable to furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required in this article.

> "The Commission shall have full power to determine whether any benefit provided by the employer is equal to or better than any benefit provided for in this article, and to render an award against the employers to furnish additional benefit or benefits to make up the difference between the benefit furnished by the employers and the benefits required by this article as the case may be. . . ." [1]

---

[1]. With the exception of some minor style changes and a lettering of the paragraphs, this portion of the statute is today identical. Maryland Code (1957, 1964 Repl. Vol., 1976 Cum. Supp.) Art. 101, § 33 (c), (d).

Four issues were presented to the Commission. First, appellees claimed that Mazor's pension benefits were equal to or better than any benefit provided by workmen's compensation. Secondly, while recognizing that the statute is couched in terms of discharging only the employer's obligation, appellees argued that § 33 also implicitly provided for discharge of the insurer's obligation. Thirdly, Mazor contended that as a matter of statutory interpretation, § 33 required a setoff only if the accident resulted in death. Lastly, Mazor contended that application of § 33 to his case would violate a number of his constitutional rights.

In its October 1974 ruling, the Commission determined that Mazor's pension benefits were equal to or better than those provided under the workmen's compensation law, but rejected the contention that the insurer, as distinguished from the employer, was entitled to a discharge. Consequently, the Commission did not reach the last two issues. Rather, it found that Mazor suffered a permanent 60% disability solely as a result of the 1972 incident, and therefore awarded him $65 a week or $3,380 per year, not to exceed $26,000. Art. 101, § 36 (4), (4a).[2]

The employer and insurer appealed the decision of the Commission to the Circuit Court for Baltimore County. After the case was removed to Harford County for trial, they moved for summary judgment. In granting the motion, the court (Close, J.) held that the insurer, as well as the employer, was entitled to a discharge of his obligation; that § 33 was not limited to death cases; and that the statute did

---

Art. 101, § 21 (a) (2) subjects these employers to the provisions of the workmen's compensation laws:

"The State, any agency thereof, and each county, city, town, township, incorporated village, school district, sewer district, drainage district, public or quasi-public corporation, or any other political subdivision of the State that has one or more employees subject to this act."

2. This award was subject to a credit for payments received earlier pursuant to a temporary total disability award stemming from the same injury. Mazor does not contest the validity of this aspect of the Workmen's Compensation Commission award.

not violate any of Mazor's constitutional rights. It therefore reversed the Commission's ruling.[3] The Court of Special Appeals affirmed the circuit court judgment.

## I

Because Mazor has conceded here that the benefits he receives from his disability pension are equal to or better than any benefits he could receive from workmen's compensation,[4] we need consider only two issues of statutory interpretation: whether § 33 entitles the insurer, as well as the employer, to a discharge of its obligation and whether § 33 discharges the workmen's compensation obligation when the employee's injury does not result in death. We shall answer both questions in the affirmative.

As we have so often said, the cardinal rule of construction of a statute is to ascertain and carry out the real intention of the Legislature. *State v. Fabritz,* 276 Md. 416, 421, 348 A. 2d 275 (1975); *Fairchild v. Maritime Air Serv.,* 274 Md. 181, 185, 333 A. 2d 313 (1975); *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 65, 327 A. 2d 483 (1974). The primary source from which we glean this intention is the language of the statute itself. *State v. Fabritz,* 276 Md. at 421. And in construing a statute we accord the words their ordinary and natural signification. *Bright v. Unsat. C. & J. Fund Bd.,* 275 Md. 165, 169, 338 A. 2d 248 (1975); *Md.-Nat'l Cap. P. & P. v. Rockville,* 272 Md. 550, 556, 325 A. 2d 748 (1974); *Grosvenor v. Supervisor of Assess.,* 271 Md. 232, 237-38, 315 A. 2d 758 (1974). If reasonably possible, a statute is to be read so that no word, phrase, clause or sentence is rendered surplusage or meaningless. *Prince George's Co. v. White,* 275 Md. 314,

---

**3.** Mazor cross-claimed against the employer, insurer and Subsequent Injury Fund, asserting that he should have been adjudged permanently and totally disabled. Since the court determined that because of the setoff, Mazor would not be entitled to any workmen's compensation award, even if the Commission had found permanent total disability, it did not decide the issue raised by Mazor's cross-appeal; nor is this issue before us.

**4.** It makes no difference, for the purpose of the concession, that Mazor chose from among several payment schedules one which reduced current retirement system payments to him, but which provided for continued payments to his wife upon his death: all of the schedules are actuarially equivalent. Code (1957, 1970 Repl. Vol.) Art. 73B, § 11 (11) (a).

319, 340 A. 2d 236 (1975). Similarly, wherever possible an interpretation should be given to statutory language which will not lead to absurd consequences. *Fairchild v. Maritime Air Serv.*, 274 Md. at 186. Moreover, if the statute is part of a general statutory scheme or system, the sections must be read together to ascertain the true intention of the Legislature. *Blumenthal v. Clerk of Cir. Ct.*, 278 Md. 398, 403, 365 A. 2d 279 (1976); *Thomas v. State*, 277 Md. 314, 317, 353 A. 2d 256 (1976); *County Council v. Supervisor*, 274 Md. 116, 120, 332 A. 2d 897 (1975).

Applying these principles, we conclude that § 33 not only provides for discharge of employers, but also applies in the same manner to insurers. Mazor recognizes that "when the Legislature by statute authorized employers to contract with insurance companies in order to cover possible claims under Article 101 it intended the insurance carrier to stand in the position of the employer." *Flood v. Merchants Ins. Co.*, 230 Md. 373, 377, 187 A. 2d 320 (1963). In an attempt to avoid application of this rule, Mazor contends that only by express provision may his benefits be reduced. He recognizes, however, that § 33 does discharge an employer's obligation. To adopt Mazor's interpretation here, then, would produce an anomalous consequence, whereby the insurer conceivably would pay benefits to the employee without receiving premiums from the employer. For the same reason, the effect of such an interpretation on self-insured employers, *see* Art. 101, § 16 (3), would differ from that on employers who are not self-insured. By interpreting the statute to discharge also the obligation of insurers, we avoid such "absurd consequences." *Fairchild v. Maritime Air. Serv.*, 274 Md. at 186.

The gist of Mazor's second argument is that § 33 applies only where the injury results in the employee's death. To sustain this position, as we understand it, he would have us parse the first sentence in this manner:

> "Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise,

any benefit or benefits are furnished employees of employers covered under § 21 (a) (2) of this article,

    [(1)] the dependents and
    [(2)] others

entitled to benefits under this article as a result of the death of such employees, the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer for any benefit under this article. . . ."

Appellees, on the other hand, contend that the sentence should be read quite differently:

"Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished

    [(1)] employees of employers covered under § 21 (a) (2) of this article [or]
    [(2)] the dependents and others entitled to benefits under this article as a result of the death of such employees,

the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer for any benefit under this article. . . ."

We agree with appellees' interpretation and believe that the statute is clear and unambiguous on its face, thus obviating the necessity of referring to any legislative history. *Cf. Blumenthal v. Clerk of Cir. Ct.*, 278 Md. at 403 (ambiguity found). To agree with Mazor's position would require us to read this portion of § 33 as a grammatically incorrect English sentence whereby the phrase, "the dependents and others entitled to benefits under this article as a result of the death of such employees," would have absolutely no structural function. As a corollary of the rule that we accord words their ordinary meaning, we must accord sentences an ordinary grammatical structure. In

short, Mazor's position would create a forced and strained interpretation of the statute.

We regard as persuasive the decision of the Court of Special Appeals in *Nooe v. City of Baltimore*, 28 Md. App. 348, 345 A. 2d 134 (1975), *cert. denied*, 276 Md. 748 (1976), where it considered the identical question presented here. There, the court also held that death of the employee is not a condition precedent to the discharge of the employer's obligation to provide workmen's compensation benefits. As the court in *Nooe* aptly recognized, adoption of the employee's position would lead to consequences not intended by the Legislature: the rights of widows and orphans of a deceased employee would be severely restricted, while an employee who sustained relatively minor injuries resulting in a disability pension award would be entitled to double benefits. *Id.* at 356.

Our holding recognizes that workmen's compensation is one facet of an overall system of wage-loss protection, and that the underlying principle of the system is to restore to the worker a portion of wages lost by physical disability, unemployment, or old age. It follows that although two or more causes of wage loss may coincide, the benefits need not cumulate, for the worker experiences but one wage loss. 4 Larson, Law of Workmen's Compensation §§ 97.00, 97.10 (1976).

A majority of American jurisdictions provide some form of setoff in the area of wage-loss legislation. 4 Larson, *supra*, § 97.20; *cf.* Social Security Act § 224, 42 U.S.C. 424a (1970) (reduction of Social Security benefits where individual is entitled to workmen's compensation). The cases cited by Mazor for the proposition that one may receive full workmen's compensation benefits while receiving other disability payments are distinguishable because all of the cases involved a meshing of federal and state programs.[5]

---

5. Cudahy Packing Company v. Industrial Commission, 7 Ariz. App. 335, 439 P. 2d 307, 309 (1968); Snead v. Adams Construction Company, 72 N. M. 94, 380 P. 2d 836, 838 (1963); Aquillina v. Victor Adding Machine Company, 26 App. Div. 2d 869, 273 N.Y.S.2d 988 (3d Dep't 1966); Meyers v. Walsh Construction Company, 12 App. Div. 2d 371, 211 N.Y.S.2d 590, 591 (3d Dep't 1961) (dictum).

Concededly, the statutory schemes throughout the country evidence a variety of approaches, but in any event, the express provision in our statute is controlling here.

## II

Secondly, Mazor contends that even if we interpret the statute as discharging the obligation of the employer and insurer to provide him with workmen's compensation benefits, the statute violates several of his constitutional rights. Since the protection afforded by some of these rights overlaps, we need not treat all of them separately. We hold, however, that the statute infringes on none of his rights and is thus constitutional.

## A

We turn first to Mazor's contentions that the statute deprives him of property without just compensation in contravention of Art. III, § 40 of the Maryland Constitution, and without due process of law contrary to both Art. 23 of the Maryland Declaration of Rights and the Fourteenth Amendment of the Federal Constitution. The due process violation, Mazor claims, lies not in the procedures employed, but in the substantive effect of the statute. Manifestly, these contentions are one and the same, since "the Fourteenth Amendment, Art. 23 of the Maryland Declaration of Rights, and Art. 3, Sec. 40 of the Maryland Constitution have . . . the same meaning and effect in reference to an exaction of property . . . ." *Allied American Co. v. Comm'r*, 219 Md. 607, 615-16, 150 A. 2d 421 (1959) (citation omitted).[6] Accordingly, we shall treat these contentions together.

Because the workmen's compensation laws protect workers and their families from the hardships inflicted by work-related injuries, they represent an exercise of the

---

6. Indeed, Mazor might also have claimed a violation of his rights under the Fifth Amendment, since the Supreme Court "has made obligatory on the States the Fifth Amendment's command that private property shall not be taken for public use without just compensation . . . ." Gideon v. Wainwright, 372 U. S. 335, 341-42, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963) (footnote omitted).

police power. *County Council v. Investors Funding*, 270 Md. 403, 429, 312 A. 2d 225 (1973); *Solvuca v. Ryan & Reilly Co.*, 131 Md. 265, 284, 101 A. 710 (1917). To decide whether the exercise of that power violated the Due Process Clause in this instance, we must determine whether the statute "provides a real and substantial relationship to the public health, morals, safety, and welfare of the citizens of this state." *Md. Bd. of Pharmacy v. Sav-A-Lot*, 270 Md. 103, 106, 311 A. 2d 242 (1973) (citations omitted); *accord, Md. St. Bd. of Barber Ex. v. Kuhn*, 270 Md. 496, 511, 312 A. 2d 216 (1973).

Inclusion of public employees within the coverage of workmen's compensation, as provided in § 21 (a) (2), is manifestly a legitimate exercise of the police power because the legislation generally promotes the welfare of the citizens of Maryland. Absent constitutional infirmities, however, there is no requirement that the Legislature include all public employees within the coverage of those laws. The question, then, given inclusion of public employees within the coverage of Article 101, is whether the Legislature may restrict the circumstances in which an employee may receive benefits.

We believe that the General Assembly does possess that power. First, the Legislature could rationally have determined that since an employee suffers only one wage loss, he should receive the equivalent of only one disability benefit. As a corollary, the Legislature may have concluded that permitting a disabled employee to receive the full amount of both workmen's compensation and pension benefits would not promote the public welfare sufficiently to merit its authorization.

Secondly, with an eye to budgetary constraints, the General Assembly may have found that only a limited amount of funds were available for wage-loss programs, and, therefore, that permitting some persons to recover "double" benefits would reduce the benefits others would receive. Consequently, the Legislature may have concluded that prohibiting "double" recovery would result in a fairer

allocation of limited funds. In such situations, we do not pass judgment:

> ". . . [T]he Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." *Dandridge v. Williams,* 397 U. S. 471, 487, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970) (citations omitted).

Viewed in terms of the property interest at stake,[7] Mazor's contention fails for yet another reason. An employee covered by the statute has not such a right in benefits as to make every defeasance of an "accrued" interest violative of the Due Process Clause. *Flemming v. Nestor,* 363 U. S. 603, 611, 80 S. Ct. 1367, 4 L.Ed.2d 1435 (1960). To engraft upon the pension and workmen's compensation programs a concept of accrued property rights would deprive these programs of the "flexibility and boldness in adjustment to ever-changing conditions" which they demand. *Id.* at 610. The analogy drawn between social welfare and property for purposes of procedural due process, *see Goldberg v. Kelly,* 397 U. S. 254, 262, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970), "cannot be stretched to impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits." *Richardson v. Belcher,* 404 U. S. 78, 81, 92 S. Ct. 254, 30 L.Ed.2d 231 (1971).

We hold, therefore, that there was no such taking of private property without just compensation as would violate either the federal or state constitutions.

---

7. Mazor's contention is that the statute unconstitutionally deprives him of his pension, not of his workmen's compensation. But it is clearly the obligation to provide workmen's compensation benefits which § 33 discharges. Relying on City of Lincoln v. Steffensmeyer, 134 Neb. 613, 279 N. W. 272 (1938), Mazor claims that it makes no difference which benefit is actually reduced, for the effect is the same. We cannot agree. The programs stem from different statutory authority and operate under different rules and regulations. Nevertheless, in our view the answer to Mazor's contention is the same regardless of which benefit we consider him to be denied.

## B

Mazor contends further that § 33 deprives him of equal protection of the laws as guaranteed by the Fourteenth Amendment. "A statutory classification in the area of social welfare is consistent with the Equal Protection Clause . . . if it is 'rationally based and free from invidious discrimination.' [*Dandridge v. Williams*, 397 U. S. at 487]." *Richardson v. Belcher*, 404 U. S. at 81. Since the Legislature is presumed to have acted within its constitutional limits, the constitutionality of the statute will be presumed unless a clear and convincing showing by the party assailing the legislative classification establishes that it neither bears a rational relationship to a legitimate state purpose nor rests upon some ground of difference having a fair and substantial relation to the object of the legislation, but rather that it is essentially arbitrary. *Davidson v. Miller*, 276 Md. 54, 70, 79, 344 A. 2d 422 (1975); *Aero Motors v. Adm'r, M.V.A.*, 274 Md. 567, 576-77, 337 A. 2d 685 (1975); *Matter of Trader*, 272 Md. 364, 400, 325 A. 2d 398 (1974); *Md. St. Bd. of Barber Ex. v. Kuhn*, 270 Md. at 507; *Adm'r Motor Veh. Adm. v. Vogt*, 267 Md. 660, 677, 299 A. 2d 1 (1973).

What we have said in disposing of the Due Process Clause issue is applicable here to demonstrate that a rational basis for the statute exists. *See Md. St. Bd. of Barber Ex. v. Kuhn*, 270 Md. at 512. Mazor asserts, within the context of the traditional equal protection standard, that the statute arbitrarily discriminates against him in two respects, but in our view the statute is free from any invidious discrimination. Noting that § 33 reduces or discharges the workmen's compensation obligations of only those employers enumerated in § 21 (a) (2), Mazor contends that "public employees," but not "private employees," suffer the hardship of reduction of workmen's compensation benefits. This distinction alone, however, does not establish an invidious classification. To the contrary, the statute simply reflects the differences that do exist between public and private employees. Just as the Legislature may regulate the terms and conditions, for example, of the hiring, the duties, the pay and the promotion and discharge of public

employees, so too may it regulate the terms of their retirement or compensation for injury. That the Legislature has exercised the police power to regulate private industry in certain of these same areas — such as workmen's compensation — does not constitutionally mandate that public and private employees receive identical treatment.

Even where a pension plan in private industry is not subject to state regulation, it may nonetheless provide for reduction or discharge of the employer's obligation in the event the employee receives workmen's compensation. Indeed, many employment contracts so provide, 4 Larson, *supra*, § 97.51, or provide for supplementation of statutory benefits. *Id.* at §§ 97.52-.54. Thus, the ostensible discrimination created by the statute may not exist in fact. That the Legislature chose to reduce public employees' workmen's compensation benefits rather than their pension benefits may simply reflect an analysis of anticipated costs or administrative problems.

In further support of his equal protection claim, Mazor contends that § 33 treats some public employees differently from others. The first paragraph of the section, as applicable to this case, provided:

> "In time of peace and while engaged in military service all officers and enlisted men of the organized militia of the State of Maryland shall be deemed workmen of the State for wages within the meaning of this section; provided that, whenever and so long as provision equal to or better than that given under the terms of this article is made by the federal government for an employee of the military department of Maryland injured in the course of employment, such employee shall not be entitled to the benefit of this article."

Members of the militia, says Mazor, are not subject to setoff against their state pension, only their federal benefits. In our view, this interpretation of this provision is incorrect. The statute clearly states that members of the militia are employees "within the meaning of *this section*." (Emphasis

added). Thus, they too are subject to the offset provision in the succeeding paragraph of § 33, which we quoted earlier.

The proviso in the paragraph in question does, of course, establish an offset, but only where the federal benefits are equal to or better than those provided by workmen's compensation. And therefore, before it was amended by Chapter 762, Laws of 1976, *see* Art. 101, § 33 (a), the offset established by this paragraph may well have permitted receipt of both workmen's compensation and federal benefits if the latter were not equal to or better than the former. *See Montgomery County v. Kaponin,* 237 Md. 112, 205 A. 2d 292 (1964). Far from being arbitrary, however, this distinction, when made, stemmed from the unique circumstances and hazards of military employment. Significantly, the members of the militia may in an emergency be ordered into the active military service of the United States. Code (1957, 1972 Repl. Vol.) Art. 65, § 41. To the extent, therefore, that the statute permitted "double" recovery, it may have reflected the State's awareness of the services rendered to the State in time of need. *Cf. Johnson v. Robison,* 415 U. S. 361, 94 S. Ct. 1160, 39 L.Ed.2d 389 (1974) (conscientious objectors assigned to alternative civilian service may be excluded from certain veteran's education benefits offered for military service).

C

Finally, Mazor urges that § 33 impairs an obligation of contract in violation of Art. I, § 10 of the Federal Constitution. To sustain this argument, Mazor advances the contention that Art. 73B, § 16 establishes payment of the pension as a contractual obligation of the State; and that it is no answer to say that he would receive the full pension benefits, since it is equally improper to reduce his workmen's compensation benefits by applying his pension entitlement. With equal vigor, appellees contend that no contractual obligation exists, relying for their position on *Richardson v. Belcher,* 404 U. S. 78, in which the Supreme Court held that the obligations of the federal government to pay social security disability benefits may be discharged by payment to the employee of workmen's compensation

benefits. Indeed, appellees argue, the employer's position here is stronger because Mazor made no contributions to the pension. We need not decide whether Mazor's pension rights rise to the level of contract, since it is clear to us that even if they do, there has been no impairment of the State's obligation.

The only authority which Mazor cites for his contention that his contract rights are impaired regardless of which benefit is reduced is *City of Lincoln v. Steffensmeyer*, 134 Neb. 613, 279 N. W. 272, 274-75 (1938). The court there held that the Nebraska statute did not prohibit Steffensmeyer from receiving both workmen's compensation benefits and a fireman's pension, and that therefore the order in which he *applied* for benefits was of no consequence. Quite obviously, *Steffensmeyer* cannot stand for the proposition that it is immaterial to which benefit a reduction *is applied.*

In our view, the statute here clearly indicates that it is the workmen's compensation benefits which are to be reduced. Although both the pension and the workmen's compensation programs spring from the same purpose, to protect workers against the hardships of wage loss, the similarity ends there. The terms and conditions of eligibility for the benefits and awards differ widely between the two programs. Indeed, enactment of § 33 may have been a legislative response to our decision in *Montgomery County v. Kaponin*, 237 Md. 112. *See Nooe v. City of Baltimore*, 28 Md. App. at 350-52. In any event, it is manifest to us that reduction of workmen's compensation on the basis that a worker is receiving pension benefits is not equivalent to reduction of the pension itself. In sum, since there has been no reduction of Mazor's pension, there has been no impairment of a state obligation.[8]

*Judgment affirmed; appellant to pay costs.*

---

8. Both the circuit court and the Court of Special Appeals, in holding that employer's and insurer's obligations were discharged, found it unnecessary to rule on the issue raised by the Subsequent Injury Fund, one of the appellees here. Although the Fund filed no cross-petition for a writ of certiorari, it has asked us, in its brief, to exercise our discretion under

Maryland Rule 885, and to determine whether it, like the employer and insurer, is entitled to reduce or eliminate its payments to a claimant who is receiving pension benefits. "[E]xcept in most extraordinary circumstances, [however,] we will consider on an appeal resulting from a grant of a writ of certiorari only those questions raised in the petition and matters relevant to those questions, in the absence of a cross-petition raising additional questions." Walston v. Sun Cab Co., 267 Md. 559, 569, 298 A. 2d 391 (1973); *accord,* Dempsey v. State, 277 Md. 134, 142, 355 A. 2d 455 (1976). Clearly, no extraordinary circumstances are present here, nor is a determination of the Fund's question relevant to a determination of the issues Mazor has raised. Accordingly, we decline to reach this issue.