907 A.2d 294

David Allen TESTERMAN

v.

STATE of Maryland.

No. 2781, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 13, 2006.

326

Mark Colvin (Nancy S. Forster, Public Defender, on brief), for appellant.

Robert Taylor, Jr. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel DAVIS, EYLER, JAMES R. and KRAUSER, JJ.

KRAUSER, J.

Appellant David Allen Testerman was convicted by a jury in the Circuit Court for Harford County of eluding a uniformed police officer as well as driving while impaired, driving while his license was suspended, and making an unsafe lane change. Having been previously convicted of both driving while impaired and driving while his license was suspended, he was thereafter sentenced as a subsequent offender under §§ 27–101(f)(1) and 27–101(h)(2) of the Transportation Article.

On appeal, he presents two questions for review, which are set forth below largely as they appear in his brief:

1. Was [appellant] improperly sentenced as a subsequent offender?

2. Is the evidence insufficient to sustain the conviction for fleeing and eluding a police officer, and was [appellant] denied his constitutional right to the effective assistance of counsel because his trial attorney failed to preserve the sufficiency issue for appellate review?

For the reasons that follow, we hold that the evidence did not support appellant's conviction for eluding. Although his counsel failed to raise this issue below and thus preserve it for appellate review, we shall nonetheless reverse his conviction for that offense on the ground that, in failing to do so, his attorney did not provide effective assistance of counsel for that offense. Notwithstanding our reversal of this conviction, we hold that appellant was properly sentenced as a subsequent offender.

## TRIAL

The State's case began with the parties stipulating that, on the date of appellant's arrest, his license was suspended. A single witness, Officer James McGarvey of the Aberdeen Police Department, then testified for the State. He stated that, at about 7:00 p.m., on November 28, 2003, he was driving a marked patrol car on Rogers Street in Aberdeen when a gray Ford truck briefly swerved into his lane. After braking to avoid being struck by that vehicle, he moved into the truck's lane. When he was directly behind the truck, he turned on his lights and siren, radioed the truck's license plate number to the dispatcher, and followed the truck onto Route 40. After traveling for approximately a quarter of a mile, the truck pulled over.

Pulling up directly behind the truck, Officer McGarvey shined the spotlight of his patrol car on the back of the vehicle. As he got out of his patrol car, the officer observed appellant, who was sitting in the driver's seat, switch seats with the front seat passenger. After radioing for another officer, he walked over to the passenger's side of the truck and asked appellant, now ensconced in the front passenger seat, for his driver's license. Appellant responded by declaring that he "wasn't driving," and, in so doing, orally emitted an "overwhelming smell" of alcohol.

The officer then opened the passenger side door of the truck and asked appellant to get out. When he did, the officer observed that appellant had "poor balance;" "couldn't stand on his own;" and "had to put his hands up against the truck for support." The officer further noted that appellant's eyes were "glassy and bloodshot."

Officer McGarvey then asked appellant to perform three field sobriety tests. He refused and again insisted that he had not been driving the truck. The officer placed appellant under arrest and transported him to the Aberdeen Police Department. Walking from the patrol car to the police station, appellant was "unsteady," had "very poor balance," and, ac-

cording to the officer, needed help walking up the steps. In the station, he refused to take a Breathalyzer test.

The State's case was followed by a defense motion to dismiss all of the charges against appellant. In making that motion, defense counsel offered no argument but simply stated, "Your Honor, I would make a motion as to all the charges and I would submit." It was denied.

### Defense

Appellant called one witness to testify, David Druyor, before testifying himself. Druyor stated that, on November 28, 2003, he had driven appellant, as he often did, to and from appellant's place of work. When they arrived at appellant's home, appellant took a shower and asked Druyor to take him to Wal–Mart to buy a television set. But Druyor's car was too small to accommodate such a large item, so they took the truck that belonged to appellant's mother. Appellant drove, with Druyor in the passenger seat and appellant's small dog between them.

While appellant was driving, the dog jumped on his arm, Druyor claimed, causing the truck to swerve towards Officer McGarvey's vehicle. When, in response, the officer turned on his emergency lights, appellant asked Druyor to switch seats with him. He agreed and, after appellant stopped the truck, they changed seats. Appellant had not consumed any alcohol, Druyor asserted, either before or after getting into the truck.

The defense concluded with appellant's testimony. He admitted that he was driving the truck at the time he was pulled over by Officer McGarvey. But, he claimed that his dog caused him to swerve his truck. When, a few seconds later, the officer turned on his emergency lights, appellant insisted that he pulled over as soon as it was safe to do so. After stopping, he and his passenger switched seats, appellant admitted. But he denied that he had any alcohol to drink that day or that his eyes were glassy or that he needed help walking. He refused to take a Breathalyzer test because he was, in his words, "upset" and "mad" at Officer McGarvey.

At the close of all the evidence, defense counsel said, "I would make the motion [for judgment] at this time." That motion was also denied.

## SENTENCING HEARING

At sentencing, the prosecutor offered into evidence State's Exhibits 1 and 2, the "Subsequent Offender Notices." The exhibits were received into evidence, without objection.

The two exhibits recited that "The following offense(s) will be relied on in requesting subsequent offender treatment." Together, they presented the following information:

| OFFENSE DATE | CONVICTION DATE | OFFENSE | TRANSPORTATION SECTION |
|---|---|---|---|
| 11/11/91 | 10/15/92 | DRIVE WHILE REF/CAN/SUSP/REVOKE LICENSE | 16-303 |
| 02/27/92 | 12/02/92 | DRIVE WHILE REF/CAN/SUSP/REVOKE LICENSE | 16-303 |

| OFFENSE DATE | CONVICTION DATE | OFFENSE | TA-SECTION |
|---|---|---|---|
| 06/11/84 | | DRIVE WHILE INTOXICATED | 21-902-A |
| 09/12/91 | 06/18/92 | DRIVE WHILE INTOXICATED | 21-902-A |
| 12/25/91 | 10/15/92 | DRIVE UNDER THE INFLUENCE | 21-902-B |
| 01/16/92 | 10/15/92 | DRIVE UNDER THE INFLUENCE | 21-902-B |
| 02/17/94 | 10/19/94 | DRIVE WHILE INTOXICATED | 21-902-A |
| 11/13/95 | 04/03/97 | DRIVE WHILE INTOXICATED | 21-902-A |

The circuit court thereafter sentenced appellant to a term of one year's imprisonment and fined him $500 as a subsequent offender for driving while impaired; to a term of two years' imprisonment and fined him $500 as a subsequent offender for driving while his license was suspended; and to a term of one year's imprisonment and fined him $500 for eluding a uniformed police officer. After suspending the fines for both driving while his license was suspended and eluding a uniformed police officer and then ordering that all terms of imprisonment were to run consecutively, the court suspended the term of one year's imprisonment for eluding and imposed a five-year term of probation to commence with appellant's release from incarceration.

## DISCUSSION

### I.

■ Appellant contends that the court erred in sentencing him as a subsequent offender because the State, he claims,

failed to prove the existence of the requisite prior convictions. The court, he argues, should not have relied on the Subsequent Offender Notices introduced by the State because they were not competent evidence of his prior convictions.

Appellant was sentenced as a subsequent offender under § 27–101 of the Transportation Article of the Maryland Code, which provides, in part:

### § 27–101 Penalties for misdemeanor.

\* \* \*

(c) [*Penalties*]—*$500 and 2 months.*—Any person who is convicted of a violation of any of the provisions of the following sections of this article is subject to a fine of not more than $500 or imprisonment for not more than 2 months or both:

\* \* \*

(23) Except as provided in subsections (f) and (q) of this section, § 21–902(b) ("Driving while impaired by alcohol");

\* \* \*

(f) *Same—$500 and 1 year; prior conviction of § 21–902(a).*—

(1) A person is subject to a fine not exceeding $500 or imprisonment not exceeding 1 year or both, if the person is convicted of:

\* \* \*

(ii) A second or subsequent violation of:

\* \* \*

2. Except as provided in subsection (q) of this section:

A. § 21–902(b) of this article ("Driving while impaired by alcohol");

\* \* \*

(h) *Same—$1,000 and 1 year; $1,000 and 2 years.*—Any person who is convicted of a violation of any of the provisions of § 16–303(a), (b), (c), (d), (e), (f), or (g) of

this article ("Driving while license is canceled, suspended, refused, or revoked"), § 17–107 of this article ("Prohibitions"), or § 17–110 of this article ("Providing false evidence of required security") is subject to:

(1) For a first offense, a fine of not more than $1,000, or imprisonment for not more than 1 year, or both; and

(2) For any subsequent offense, a fine of not more than $1,000, or imprisonment for not more than 2 years, or both.

"[T]he burden is on the State to prove, by competent evidence and beyond a reasonable doubt, the existence of all the statutory conditions precedent for the imposition of enhanced punishment." *Jones v. State*, 324 Md. 32, 37, 595 A.2d 463 (1991). Thus, in the instant case, the State had the burden of proving, beyond a reasonable doubt, the existence of appellant's prior convictions. *Beverly v. State*, 349 Md. 106, 124, 707 A.2d 91 (1998). *See also Sutton v. State*, 128 Md.App. 308, 327, 738 A.2d 286 (1999); *Ford v. State*, 73 Md.App. 391, 400–03, 534 A.2d 992 (1988); *Sullivan v. State*, 29 Md.App. 622, 631, 349 A.2d 663 (1976).

Relying on two cases, *Sullivan v. State*, 29 Md.App. 622, 349 A.2d 663 (1976) and *Ford v. State*, 73 Md.App. 391, 534 A.2d 992 (1988), appellant claims that the State failed to meet its burden of proof. But that reliance is misplaced.

In *Sullivan*, the defendant was convicted of unlawfully carrying a handgun. During sentencing, the prosecutor told the court that the defendant's "record reveal[ed]" that he was currently on probation for a handgun violation. 29 Md.App. at 625, 349 A.2d 663. The trial court then sentenced the defendant as a subsequent offender. *Id.* at 628, 349 A.2d 663. Vacating that sentence, this Court held that the State failed to establish that the defendant had been previously convicted of a handgun crime, having "offered no evidence whatsoever on the matter." *Id.* at 631, 349 A.2d 663.

In *Ford*, the defendant was also charged with unlawfully carrying a handgun. As in *Sullivan*, the prosecutor, at sentencing, offered nothing more than unsubstantiated allegations

that the defendant had been previously convicted of offenses, which he claimed rendered the defendant a "subsequent offender" under former Article 27, § 36B. 73 Md.App. at 402, 534 A.2d 992. Certified copies of the prior convictions, which the prosecutor claimed to have, were never offered into evidence. *Id.* Vacating that sentence, too, we explained that, "[i]n those cases where we have found evidence of a prior conviction beyond a reasonable doubt, the State ha[d] substantiated that fact with some documentation or overt admission." *Id.* at 404, 534 A.2d 992.

But, in marked contrast to *Sullivan* and *Ford*, the prosecutor in the instant case provided the court with more than just his personal assurances that the accused had been previously convicted of the requisite prior offenses. As previously noted, he introduced confirming Subsequent Offender Notices, which were then admitted into evidence *without objection.*

Lest any doubt remains as to the propriety of the circuit court's reliance on subsequent offender notices, *Sutton v. State*, 128 Md.App. 308, 738 A.2d 286 (1999), provides a dispositive analogue. In *Sutton*, Andre Sutton was convicted of possession of cocaine base and possession of cocaine base with the intent to distribute it. Seeking to have Sutton sentenced as a subsequent offender under former Article 27, § 286(c)(1), the State brought to the attention of the trial court a "presentence investigation report" that listed Sutton's prior convictions.[1] After considering that report without objection, the trial court sentenced Sutton as a subsequent offender. *Id.* at 327–28, 738 A.2d 286.

Challenging that sentence on appeal, Sutton claimed that the State, by failing to introduce certified copies of his convictions, had not met its burden of proving their existence beyond a reasonable doubt. Finding no error, we stated that "the unchallenged presentence investigation report was sufficient in itself to sustain the State's burden of proving [Sut-

---

1. The opinion in *Sutton* does not state what Sutton's prior convictions were for.

ton's] prior conviction beyond a reasonable doubt." *Id.* at 330, 738 A.2d 286.

As in *Sutton,* here, the trial court considered documentation other than certified copies of appellant's prior convictions. And, as in *Sutton,* at no time did appellant [2] or his counsel object to that consideration or suggest to the court that the information in the Subsequent Offender Notices was erroneous. Hence, the State satisfied its burden of proving beyond a reasonable doubt appellant's prior convictions.

## II.

Appellant contends that the evidence did not support his conviction for eluding because the factual predicates of that conviction—switching seats with his passenger—did not constitute eluding under § 21–904(d). That being so, he maintains that his counsel's failure to raise this issue below and thereby preserve it for appeal constituted ineffective assistance of counsel.

In addressing appellant's ineffective assistance claim, the first question is whether we may address this issue on direct appeal. In that regard, we note that generally a post-conviction proceeding is the "most appropriate" way to raise a claim of ineffective assistance of counsel, *Mosley v. State,* 378 Md. 548, 558–59, 836 A.2d 678 (2003), because "ordinarily, the trial record does not illuminate the basis for the challenged acts or omissions of counsel." *In re Parris W.,* 363 Md. 717, 726, 770 A.2d 202 (2001). But, we may nonetheless do so, "where the critical facts are not in dispute and the record is sufficiently developed to permit a fair evaluation of the claim, there is no need for a collateral fact-finding proceeding, and review on direct appeal may be appropriate and desirable." *Id.; see Mosley,* 378 Md. at 566, 836 A.2d 678; *Lettley v. State,* 358 Md. 26, 32, 746 A.2d 392 (2000).

---

2. Appellant personally addressed the court at sentencing, but did not contest the State's assertion that he was a subsequent offender.

The "critical facts are not in dispute" here: Appellant changed seats with his front seat passenger after complying with a request by a police officer to stop his vehicle. And, since this issue was fully aired at trial, "the record is sufficiently developed to permit a fair evaluation of [appellant's] claim." Hence, we conclude that "there is no need for a collateral fact-finding proceeding, and review [of appellant's claim]" by this Court would "be appropriate and desirable."

■ Appellant was convicted of eluding a uniformed police officer under former § 21-904, which provided:

(a) *"Visual or audible signal"* defined.—In this section "visual or audible signal" includes a signal by hand, voice, emergency light or siren.

(b) *Failing to stop vehicle.*—If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver of a vehicle may not attempt to elude the police officer by willfully failing to stop the driver's vehicle.

(c) *Fleeing on foot.*—If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver may not attempt to elude the police officer by fleeing on foot.

(d) *Attempting to elude police by other means.*—If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver may not attempt to elude the police officer by any other means.

(e) *Attempting to elude police in official police vehicles.*—If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by willfully failing to stop the driver's vehicle.

(f) *Fleeing on foot.*—If a police officer gives a visual or audible signal to stop and the police officer, whether or not

in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by fleeing on foot.

(g) *Attempting to elude by other means.*—If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by any other means.

Md.Code (1977, 2002 Repl.Vol.), § 21–904 of the Transportation Article.[3]

Appellant was charged under subsection (d) of § 21–904: attempting "to elude uniformed police by means other than failing to stop and fleeing on foot." The elusion occurred,

---

3. Section 21–904 was amended in 2005. At that time, subsections (b), (c), and (d) and subsections (e), (f), and (g) were consolidated into subsections (b) and (c), respectively. Eluding that results in bodily injury and eluding that results in the death of another person were added as separate offenses.

Section 21–904 now provides:

(a) *"Visual or audible signal" defined.*—In this section, "visual or audible signal" includes a signal by hand, voice, emergency light or siren.

(b) *Failing to stop vehicle.*—If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver of a vehicle may not attempt to elude the police officer by:
(1) Willfully failing to stop the driver's vehicle;
(2) Fleeing on foot; or
(3) Any other means.

(c) *Fleeing on foot.*—If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police by:
(1) Willfully failing to stop the driver's vehicle;
(2) Fleeing on foot; or
(3) Any other means.

(d) *Attempting to elude police officer in violation of subsections (b)(1) and (c)(1) of this section.*—(1) A driver may not attempt to elude a police officer in violation of subsection (b)(1) or (c)(1) of this section that results in bodily injury to another person.

(2) A driver may not attempt to elude a police officer in violation of subsection (b)(1) or (c)(1) of this section that results in death of another person.

Md.Code (1977, 2006 Repl.Vol.), § 21–904 of the Transportation Article

according to the State, when appellant switched seats with David Druyor, his passenger. Arguing to the jury that it should convict appellant of that offense, the State asserted: "Well, his attempt to elude the police officer we know here, ladies and gentlemen, was his changing of the seats. Trying to get this witness back here in the driver's seat would be the attempt to elude the police officer." As that was the factual predicate for the "eluding" conviction, we must now determine whether appellant's act of switching seats with his passenger, after he had already stopped his vehicle, constituted "eluding" a police officer under § 21–904.

"The 'cardinal rule' of statutory interpretation, 'is to ascertain and effectuate legislative intent.' " *Mona Elec. Servs., Inc. v. Shelton*, 148 Md.App. 1, 8, 810 A.2d 1022 (quoting *Mayor & City Council v. Chase*, 360 Md. 121, 128, 756 A.2d 987 (2000)), *aff'd*, 377 Md. 320, 833 A.2d 527 (2003). Therefore "we look first to the words of the statute, giving them their 'natural and ordinary signification, bearing in mind the statutory aim and objective.' " *Azarian v. Witte*, 140 Md.App. 70, 96, 779 A.2d 1043 (2001) (quoting *Richmond v. State*, 326 Md. 257, 262, 604 A.2d 483 (1992)), *aff'd*, 369 Md. 518, 801 A.2d 160 (2002). If possible, " 'a statute is to be read so that no word, phrase, clause or sentence is rendered surplusage or meaningless.' " *Kerpelman v. Smith, Somerville & Case, L.L.C.*, 115 Md.App. 353, 356–57, 693 A.2d 357 (1997) (quoting *Mazor v. State Dep't of Corr.*, 279 Md. 355, 360, 369 A.2d 82 (1977)).

Moreover, "we must always be cognizant of the fundamental principle that statutory construction is approached from a 'commonsensical' perspective. Thus, we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State*, 336 Md. 125, 137, 647 A.2d 106 (1994) (quoting *Richmond*, 326 Md. at 262, 604 A.2d 483) (internal citations omitted). "We also avoid constructions that would 'lead to absurd [results].' " *Azarian*, 140 Md.App. at 97, 779 A.2d 1043 (quoting *Thanos v. State*, 332 Md. 511, 525, 632 A.2d 768 (1993)). " '[I]f the statute is

part of a general statutory scheme or system, the sections must be read together to ascertain the true intention of the Legislature.' " *Kerpelman,* 115 Md.App. at 357, 693 A.2d 357 (quoting *Mazor,* 279 Md. at 361, 369 A.2d 82).

■■■ Although § 21–904 does not expressly define "eluding," once this term is placed in its statutory context, its definitional contours quickly emerge. Section 21–904 prohibits three forms of eluding: eluding by "willfully failing to stop the driver's vehicle;" eluding by "fleeing on foot;" and eluding "by any other means." To determine the characteristics of the third form of eluding, we are guided by that statutory axiom—*"ejusdem generis."* That canon of statutory construction informs us that " 'when general words in a statute follow the designation of particular things or classes of subjects or persons, the general words will usually be construed to include only those things or persons of the same class or general nature as those specifically mentioned.' " *In re Wallace W.,* 333 Md. 186, 190, 634 A.2d 53 (1993) (quoting *Giant of Md. v. State's Attorney,* 274 Md. 158, 167, 334 A.2d 107 (1975)).

Expanding on that definition, the Court of Appeals observed that

"[t]he doctrine of ejusdem generis applies when the following conditions exist: (1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires. It is generally held that the rule of ejusdem generis is merely a rule of construction and is only applicable where legislative intent or language expressing that intent is unclear."

*Id.* (quoting 2A *Sutherland Statutory Construction* § 47.18, at 200 (5th ed.1992)).

■■■ Moreover, *ejusdem generis* is to be applied " 'more strictly in the construction of penal statutes ... since penal statutes shall be narrowly construed.' " *Id.* at 191, 634 A.2d 53

(quoting *Giant of Md.,* 274 Md. at 167–68, 334 A.2d 107). In other words, a statute, particularly one of a penal nature, will not be "extend[ed] . . . to cases not plainly within the language used." *State v. Fleming,* 173 Md. 192, 196, 195 A. 392 (1937).

In construing the phrase "elud[ing] the police officer by any other means" "to include only those things or persons of the same class or general nature as those specifically mentioned," the elusion must occur, as in the case of eluding by "willfully failing to stop the driver's vehicle" and eluding by "fleeing on foot," in response to a police officer's signal to stop. That did not occur here. In fact, appellant complied with the officer's request to stop by pulling over and stopping. And he thereafter made no effort to leave the scene in disregard of the officer's order. His action was not to flee or conceal his person or otherwise avoid contact with the officer, but only to mislead the officer into believing he was not the driver. Although he may have been attempting to evade arrest, he was not attempting to evade the police officer. And that distinction is critical. Section 21–904 prohibits eluding a "police officer," not eluding "arrest."

Were we to rule otherwise, as the State requests, and find that the action taken by appellant in switching seats constitutes "eluding" a police officer, we would, in effect, be expanding § 21–904 so that its general form, unlike the specific forms set forth in the statute, covered any action taken to conceal evidence or mislead investigating officers. The statute then arguably would encompass actions to conceal evidence or alter appearance upon being stopped by police, such as hiding an open container of alcohol under a car seat, or even using a breath mint to conceal the odor of alcohol. Therefore, we hold that appellant's act of switching seats with his passenger did not constitute "eluding" a police officer under § 21–904.

Our view of "eluding" is apparently shared by other states. After an extensive examination of hundreds of "eluding" cases, we were unable to find a single reported case in any state in which a defendant's conviction for "eluding" was based on conduct similar to appellant's conduct. Instead, the cases we

reviewed all involved an attempt to flee or avoid contact with a pursuing police officer. *See, e.g., Spence v. State,* 263 Ga.App. 25, 587 S.E.2d 183 (2003) (following signal by officer's to stop, defendant ran stop sign and made left turn before stopping); *Brackins v. State,* 249 Ga.App. 788, 549 S.E.2d 775 (2001) (after officer activated lights and siren, defendant "sped away," drove on the wrong side of the road, drove through a yard and fence, and hit a tree); *State v. Miller,* 131 Idaho 288, 955 P.2d 603 (1997) (officer turned on siren and flashing lights and defendant drove away, running a stop sign); *People v. Brown,* 362 Ill.App.3d 374, 298 Ill.Dec. 273, 839 N.E.2d 596 (2005), *appeal denied,* 218 Ill.2d 545, 303 Ill.Dec. 4, 850 N.E.2d 809 (2006) (officers pursued defendant driving at 70 to 80 miles per hour in a 35 miles per hour zone); *People v. Grayer,* 252 Mich.App. 349, 651 N.W.2d 818 (2002) (following officer's activation of overhead lights and siren, defendant accelerated and made a sharp turn onto his property before stopping); *State v. Bunch,* 180 N.J. 534, 853 A.2d 238 (2004) (officers pursued defendant who drove in excess of the speed limit, turned without signaling, failed to stop for stop signs, drove on the wrong side of the road, and drove the wrong way down a one-way street before crashing into a parked car); *State v. Pollack,* 462 N.W.2d 119 (N.D., 1990) (while being escorted to a police car, defendant "broke away" from the officer's grasp and ran away); *State v. Erdman,* 422 N.W.2d 808 (N.D., 1988) (officers pursued defendant in fourteen mile "high speed" chase).

 The next question is whether the failure of appellant's counsel to point out that switching seats does not satisfy the legal definition of "eluding" a police officer and thereby failing to preserve this issue for appellate review constituted ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel at a criminal trial. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim that such assistance was not accorded, the claimant must satisfy a two-pronged test: He must demonstrate that (1) his trial counsel's performance was

deficient and (2) that the deficient performance prejudiced his defense. *Id.* at 687, 104 S.Ct. 2052.

As for the first prong—deficient performance of counsel—appellant must show "that his counsel's acts or omissions were the result of unreasonable professional judgment and that counsel's performance, given all the circumstances, fell below an objective standard of reasonableness considering prevailing professional norms." *Oken v. State*, 343 Md. 256, 283, 681 A.2d 30 (1996) (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). To do so, he must "overcome the presumption that the challenged action might, under the circumstances, be considered sound trial strategy." *Id.*

There is no dispute that appellant's counsel failed to preserve the claim that the evidence did not support a conviction for eluding a uniformed police officer by failing to raise that issue. *Johnson v. State*, 90 Md.App. 638, 649, 602 A.2d 255 (1992) (citing *Brooks v. State*, 68 Md.App. 604, 611, 515 A.2d 225 (1986), *cert. denied*, 308 Md. 382, 519 A.2d 1283 (1987))("a motion which merely asserts that evidence is insufficient to support a conviction, without specifying the deficiency, does not comply with Rule 4–324, and thus does not preserve the issue of sufficiency for appellate review"); *see also Parker v. State*, 72 Md.App. 610, 615, 531 A.2d 1313 (1987) ("[M]oving for judgment of acquittal on the grounds of insufficiency of the evidence, without argument, does not preserve the issue for appellate review.").

At the end of the State's case, appellant's counsel simply stated, without elaboration, "Your Honor, I would make a motion as to all the charges and I would submit." Nor did he seek to remedy his error, at the conclusion of his defense, when the court directly asked, "Did you make your final motion yesterday?" His only response was: "I would make the [same] motion at this time." Because switching seats did not constitute "eluding" a uniformed police officer by any other means, appellant's counsel should have moved with particularity for a judgment of acquittal on that charge. In

not doing so, his actions "fell below an objective standard of reasonableness" and fail the first *Strickland* prong.

The State contends, however, that appellant's counsel may have decided not to raise the issue of insufficient evidence because, even though "[t]here was sufficient evidence adduced at trial to support appellant's conviction for 'fleeing and eluding' under a 'failing to stop vehicle' theory," appellant's counsel had "successfully persuaded" the circuit court to give an "other means" jury instruction and not a "failing to stop vehicle" jury instruction. Having done so, appellant's counsel was in "no position," the State asserts, to then argue that the evidence was insufficient to support a conviction on an "other means" theory.

But the State's argument fails to take into consideration that appellant was charged with an "attempt by driver to elude uniformed police by means other than failing to stop and fleeing on foot," not "failing to stop" his vehicle. *State v. Boozer*, 304 Md. 98, 113, 497 A.2d 1129 (1985). Consequently, the State has failed to proffer a "sound trial strategy" that would explain why appellant's counsel did not argue that there was insufficient evidence to convict appellant of eluding by "any other means."

 As for the second *Strickland* prong—the prejudice generated by counsel's deficient performance—appellant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*

As we have previously noted, switching seats does not constitute "eluding by any other means." Thus, there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." That is, in this appeal we would have *directly* reviewed and reversed the sufficiency of the evidence of appellant's conviction for eluding a uniformed officer. Therefore, we hold

**344**

that appellant's trial counsel failed to provide effective assistance as to that charge.

**JUDGMENT OF CONVICTION FOR ELUDING A UNIFORMED POLICE OFFICER REVERSED; ALL OTHER JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY HARFORD COUNTY.**